**UNITED STATES of America,
Appellee,**

v.

**Rene Mauricio SOSA, Defendant–
Appellant.**

No. 03–1530.

United States Court of Appeals,
Second Circuit.

Argued: April 12, 2004.

Decided: Oct. 21, 2004.

David Lewis, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant–Appellant.

Michael J. Ramos, Assistant United States Attorney (Roslynn R. Mauskopf, United States Attorney, Emily Berger, Assistant United States Attorney, on the brief), Brooklyn, NY, for Appellee.

Before: OAKES, WINTER, and CALABRESI, Circuit Judges.

WINTER, Circuit Judge.

Rene Sosa appeals from a conviction before Chief Judge Korman for illegal reentry into the United States after deportation. *See* 8 U.S.C. § 1326(a), (b)(2).

The district court rejected Sosa's collateral attack on the validity of his deportation order, holding that Sosa had failed to satisfy at least two requirements of Section 1326(d): exhaustion of administrative remedies and denial of the opportunity for judicial review. We hold that Sosa has satisfied these two requirements. We vacate his conviction and remand for findings on whether Sosa satisfied the third requirement, fundamental unfairness.

## BACKGROUND

a) *Factual Background*

Sosa, a citizen of El Salvador, moved to the United States in 1979 when he was five years old. He entered as a non-immigrant visitor but adjusted his status to that of a lawful permanent resident in 1980. Sosa lived with his parents in Brooklyn until he was 17 and remains close to them. He stopped attending school at age 17, in the tenth grade. On November 30, 1992, based on his sale of heroin to an undercover police officer, Sosa pleaded guilty in New York state court to Attempted Criminal Sale of a Controlled Substance in the Fifth Degree. He was sentenced to 18 months' to three years' imprisonment. On July 11, 1996, based on his attempt to smuggle a single-edge razor blade in his belt to an inmate, Sosa pleaded guilty in the Bronx to smuggling dangerous contraband to prisoners. He was sentenced to 15 days' imprisonment.

While Sosa was incarcerated for his 1992 conviction, the Immigration and Naturalization Service ("INS") served him with an Order to Show Cause why he should not be deported. No further action was taken on the deportation proceeding, and Sosa was released on parole by the New York authorities on March 15, 1994. However, on July 15, 1997, after Sosa's 1996 conviction, the INS took him into custody.

A deportation hearing took place before an immigration judge ("IJ") in Oakdale, Louisiana, on August 12, 1997. The IJ offered Sosa an adjournment to prepare his case and/or find an attorney; Sosa declined and proceeded *pro se* that day. The IJ then informed Sosa that he had a right to an attorney, but that the government would not pay for one, and that he had a right to present evidence. Finally, the IJ told Sosa of his "right to appeal any decision of this Court to a higher court in Washington D.C." and "even after that, to the federal court system in this country."

At the IJ's request, Sosa admitted that he was not a citizen of the United States and that he was a citizen of El Salvador. Sosa also admitted to the November 3, 1992 conviction for attempted sale of heroin. The IJ then found Sosa "removable as charged" and asked whether Sosa understood that finding. Sosa responded that he did, and the IJ asked whether he wished "to accept that decision or reserve appeal." The following colloquy then occurred:

Sosa: Um, first I'd like to ask a question. Then I'll make my decision on the appeal. My first question is this. If I was to be removed from the United States how long will it be on punishment? How long will it be to come back?

Govt: Well.

IJ: Uh, at least twenty years.

Sosa: At least 20 years. Because, well, I have no family in El Salvador. No relatives.

IJ: Do you wish to accept my decision or reserve an appeal?

Sosa: I'll take it.

IJ: You accept it?

Sosa: I accept it.

The IJ then stated that the decision was final, and the INS deported Sosa to El Salvador within a month.

The issues on this appeal arise from the fact that the IJ never informed Sosa that he was eligible to seek discretionary relief from deportation under former Section 212(c) of the Immigration and Nationality Act ("INA"), 66 Stat. 163, as amended, 8 U.S.C. § 1101 *et seq.* Prior to 1996, that section gave the Attorney General "broad discretion to cancel deportation orders for aliens who met certain residence requirements and had not served five years in prison for an aggravated felony." *United States v. Copeland,* 376 F.3d 61, 64 (2d Cir.2004) (citing 8 U.S.C. § 1182(c) (repealed 1996)). In 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") made aliens convicted of aggravated felonies ineligible for Section 212(c) relief. Pub.L. No. 104–132, § 440(d), 110 Stat. 1214, enacted April 24, 1996. Later that year, the Illegal Immigrant Reform and Immigrant Responsibility Act ("IIRIRA") repealed Section 212(c) and replaced it with a provision allowing the Attorney General to cancel removal for a narrower class of aliens not including anyone "convicted of any aggravated felony." Pub.L. No. 104–208, § 304(b), 110 Stat. 3009–546, enacted Sept. 30, 1996.

The Board of Immigration Appeals ("BIA") initially determined that these new laws applied to aliens, like Sosa, who had pled guilty to aggravated felonies before the new laws were enacted. *Copeland,* 376 F.3d at 64. Because the BIA was following this interpretation when Sosa's deportation hearing took place, the IJ did not inform Sosa that he was eligible to seek Section 212(c) relief. After Sosa's deportation, however, the Supreme Court held that the 1996 amendments could not be applied retroactively to render aliens who pled guilty to aggravated felonies pri-

or to 1996 ineligible for Section 212(c) relief. *INS v. St. Cyr*, 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

Sosa reentered the United States about nine and a half months after his deportation, around June 1998. He worked installing car stereo systems between his reentry and 2002, and his employer was satisfied with his work. During this period, Sosa committed two new crimes. On March 6, 2002, he was arrested in Queens for Criminal Possession of Marijuana in the Fifth Degree; he pleaded guilty to the charge the next day. On April 5, 2002, Sosa was again arrested on the same charge. After this arrest, a fingerprint check revealed his deportation for committing an aggravated felony.

b) *District Court Proceedings*

Sosa was indicted in the Eastern District of New York for illegal reentry under 8 U.S.C. § 1326 on July 9, 2002.[1] Sosa moved to dismiss the indictment on the grounds that his deportation hearing "violated [his] right to due process." He argued that at the pertinent time he had been eligible for discretionary Section 212(c) relief under 8 U.S.C. § 1182(c) (1994), was reasonably likely to have received that relief, but was not given an opportunity to apply for it.

Section 1326(d) allows a defendant facing an illegal reentry charge to challenge collaterally the underlying deportation order. To do so successfully, the defendant must show exhaustion of administrative remedies, denial of judicial review, and fundamental unfairness in the deportation proceeding. The district court denied Sosa's motion to dismiss, holding that he had failed to meet the first two requirements of 8 U.S.C. § 1326(d)—exhaustion of administrative remedies and denial of the opportunity for judicial review. The court noted, however, that "maybe" the deportation order had been fundamentally unfair.

Sosa then entered into a conditional plea agreement under which he waived any right to appeal a sentence of less than 57 months' imprisonment but retained his right to appeal from the denial of his motion to dismiss. Sosa pled guilty on December 11, 2002 before Magistrate Judge Azrack. The Probation Department found that he had an offense level of 21 and a Criminal History Category of III, yielding a sentencing range of 46 to 57 months. The district court agreed but granted a downward departure because "these kinds of cases are the most difficult ones." The court noted that Sosa was "for all practical purposes an American and then he's dropped back into a country that's totally strange and foreign to him, even though he was born there." The court sentenced Sosa to 36 months' imprisonment and a three year term of supervised release. This appeal followed.

## DISCUSSION

As noted, an alien attempting to collaterally challenge a deportation proceeding as a defense to a criminal prosecution for illegal reentry must satisfy the three requirements of 8 U.S.C. § 1326(d):

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

---

1. Because of the federal prosecution, the pending state marijuana charges were dismissed.

(3) the entry of the order was fundamentally unfair.

*Id.* We address Sosa's compliance with each of these requirements in turn, concluding that he satisfies the first two and remanding for findings on the third.

a) *Exhaustion of Administrative Remedies*

Statutory exhaustion requirements, such as Section 1326(d)(1), are generally not subject to exceptions. *United States v. Gonzalez–Roque,* 301 F.3d 39, 47 (2d Cir. 2002) (statutory exhaustion requirements are "mandatory, and courts are not free to dispense with them") (internal quotation marks omitted); *see also Theodoropoulos v. INS,* 358 F.3d 162, 172–72 (2d Cir.2004) (futility of exhaustion excuses statutory exhaustion requirement only where administrative procedure lacks power to provide any relief; otherwise, exhaustion is required).

■ However, when an administrative order is relied upon as an element of a criminal charge, a criminal defendant must have been afforded an opportunity for judicial review of the order for that element of the crime to be proven. *United States v. Mendoza–Lopez,* 481 U.S. 828, 838, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) ("[A]t the very least ... where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense.").

■ Because Section 1326(d) was intended as a response to, and codification of, *Mendoza–Lopez,* its administrative exhaustion requirement must be subject to at least one significant exception to render it consistent with that decision. *See Copeland,* 376 F.3d at 66 (Section 1326(d) passed by Congress in response to *Mendoza–Lopez* ). There was almost certainly no administrative exhaustion in *Mendoza–Lopez* itself, see *id.* at 830, 107 S.Ct. 2148, yet the Court held that collateral review of the underlying deportation order was constitutionally required. Therefore, the exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal. Otherwise, Section 1326(d) would violate *Mendoza–Lopez* by prohibiting collateral attacks of deportation proceedings that were fundamentally unfair because they denied the alien an opportunity for judicial review.

Of course, an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid. This was the case in *Mendoza–Lopez* itself, for example. There, the Court focused on the aliens' uninformed waivers of their rights to judicial review, but their misunderstanding as to the availability of Section 212(c) relief necessarily caused their waivers of administrative remedies to be invalid as well. *Mendoza–Lopez,* 481 U.S. at 840, 107 S.Ct. 2148.

■ A failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1), therefore, only where an alien's waiver of administrative review was knowing and intelligent.[2] Where this condition is met, an

---

**2.** The Ninth Circuit has adopted this rule, albeit using slightly different reasoning. *United States v. Muro–Inclan,* 249 F.3d 1180, 1183 (9th Cir.2001) (exhaustion requirement of § 1326(d) "cannot bar collateral review of

a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process"); *United States v. Ubaldo–Figueroa,* 347 F.3d 718, 725 (9th Cir. 2003) (following *Muro–Inclan* ); *accord Unit-*

alien can be constitutionally prohibited from collaterally attacking his deportation proceeding even if denied the opportunity for judicial review, because exhaustion is a valid precondition for judicial review and a knowing and voluntary failure to exhaust would validly waive the right to judicial review. *See Theodoropoulos*, 358 F.3d at 169 (court may generally review a final order of removal only if "the alien has exhausted all administrative remedies available to the alien as of right") (internal quotations omitted).

■ In this case, the administrative exhaustion requirement is excused because Sosa's waiver of his right to an administrative appeal was not knowing and intelligent. Like the aliens in *Mendoza–Lopez*, Sosa was not informed of his right to apply for Section 212(c) relief. It would offend the principles enunciated in *Mendoza–Lopez* not to excuse the administrative exhaustion requirement under such circumstances. Indeed, the aliens in that case failed to administratively exhaust for the same reasons that Sosa failed to do so, and the Supreme Court held that collateral review was constitutionally required. *See also Copeland*, 376 F.3d at 71 ("Given that IJs have a duty to develop the administrative record, and that many aliens are uncounseled, our removal system relies on IJs to explain the law accurately to *pro se* aliens. Otherwise, such aliens would have no way of knowing what information was relevant to their cases and would be practically foreclosed from making a case against removal.").

b) *Opportunity for Judicial Review*

■ To satisfy the second requirement of Section 1326(d)(2), Sosa must demonstrate that he was denied the opportunity for judicial review of his deportation order. Under AEDPA and the transitional rules of IIRIRA, Sosa had no right to directly appeal his deportation order in federal court.[3] IIRIRA § 309(c)(4)(G). Also under those rules, after Sosa left the country, further administrative and judicial review of his deportation was barred by former Section 106 of the INA. 8 U.S.C. § 1105a(c) (1995); IIRIRA § 309(c). Sosa's only chance for judicial review was, therefore, through a habeas petition filed before his deportation.

The fact that such a chance technically existed does not necessarily mean that Sosa had an "opportunity for judicial review" within the meaning of Section 1326(d)(2). It is true that "[t]he availability of habeas review is sometimes deemed to constitute an opportunity for judicial review." *Copeland*, 376 F.3d at 68. However, *Copeland* held that "where habeas review is potentially available, an opportunity for judicial review will still be deemed to have been denied where the interval between entry of the final deportation order and the physical deportation is too brief to afford a realistic possibility of filing a habeas petition." *Id.* Thus, "where no realistic opportunity for judicial review by way of habeas review existed, an alien's failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under Section 1326(d)(2)." *Id.* at 68–69.

ed States v. Aguirre–Tello, 324 F.3d 1181, 1189–92 (10th Cir.2003), *vacated and rev'd and remanded on other grounds en banc*, 353 F.3d 1199, 1204 n. 5 (10th Cir.2004) (disposition of case by en banc court rendered it unnecessary to decide exhaustion argument addressed by panel).

3. Sosa was subject to the transitional rules of IIRIRA, since his deportation proceedings commenced on October 9, 1993, and his final order of deportation was entered on August 12, 1997. IIRIRA § 309(c); *see Copeland*, 376 F.3d at 69.

In this case, Sosa did not have a realistic possibility of seeking judicial review through a habeas petition. In the less than one month period after entry of his final deportation order and his deportation, Sosa was uncounseled and had little practical chance of finding a lawyer. Nor is it realistic to expect him to have learned about the availability of Section 212(c) relief—then a complex issue—and to have filed a *pro se* habeas petition during the period before he was actually deported. Given the speed of this process and the fact that the IJ did not inform Sosa of his eligibility for Section 212(c) relief, we hold that he had no "realistic opportunity for judicial review by way of habeas," *Id.*, and he was therefore denied the opportunity for judicial review.

### c) *Fundamental Unfairness*

Under Section 1326(d)(3), Sosa must show that his deportation proceeding was "fundamentally unfair." We have interpreted this provision to require a showing of "both a fundamental procedural error and prejudice resulting from that error." *United States v. Perez*, 330 F.3d 97, 104 (2d Cir.2003) (quoting *United States v. Fernandez–Antonia*, 278 F.3d 150, 159 (2d Cir.2002)).

We recently held that "a failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." *Copeland*, 376 F.3d at 71. The IJ in this case failed to inform Sosa of his right to seek Section 212(c) relief and therefore committed error "of a fundamental nature." *Id.* at 73. Thus, Sosa can satisfy Section 1326(d)(3) by showing that he was prejudiced by this error. An alien is prejudiced by a fundamental procedural error "where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would

have been granted Section 212(c) relief." *Id.*

Whether Section 212(c) relief would have been granted is determined by balancing "the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of section 212(c) relief appears in the best interests of this country." *Matter of Marin*, 16 I. & N. Dec. 581, 584 (BIA 1978); *Lovell v. INS*, 52 F.3d 458, 461 (2d Cir.1995).

> Adverse factors include: the nature and circumstances of the exclusion ground at issue, the presence of additional immigration law violations, the existence of a criminal record and its nature, recency and seriousness, and the presence of other evidence indicative of an alien's bad character or undesirability as a permanent resident. Favorable considerations include: family ties within this country, residence of long duration in this country, evidence of hardship to the alien and alien's family upon deportation, Armed Forces service, employment history, community service, property or business ties, evidence attesting to good character, and, in the case of one convicted of criminal conduct, proof of genuine rehabilitation.

*Lovell*, 52 F.3d at 461 (citing *Marin*, 16 I. & N. Dec. at 584–85).

The PSR includes comprehensive evidence of the adverse and favorable factors that would be relevant to a Section 212(c) relief application by Sosa. However, because of its disposition of the case, the district court did not decide whether Sosa was prejudiced by the IJ's error. We therefore remand for a determination, including an evidentiary hearing if necessary, of whether it is reasonably probable that Sosa would have been granted Section

212(c) relief in the absence of the IJ's error.

## CONCLUSION

For the foregoing reasons, we hold that: (i) Sosa is excused from the administrative exhaustion requirement because his waiver of administrative review was not knowing and intelligent; (ii) Sosa is deemed to have been denied the opportunity for judicial review because he had no practical opportunity to seek such review; and (iii) the IJ's failure to inform Sosa of his right to seek Section 212(c) relief was a fundamental procedural error that rendered Sosa's deportation order fundamentally unfair, if Sosa can show that the failure prejudiced him. Because the district court did not consider whether Sosa was prejudiced, we vacate Sosa's conviction and remand for determination of that issue.