**UNITED STATES of America,**

v.

**Carol CLINTON, Defendant.**

**No. 09 Cr. 262 (LAP).**

United States District Court, S.D. New York.

Sept. 3, 2009.

Jennifer Eileen Burns, U.S. Attorney's Office, New York, NY for Plaintiff.

Sabrina P. Shroff, Federal Defenders of New York Inc., New York, NY, for Defendant.

## MEMORANDUM and ORDER

LORETTA A. PRESKA, Chief Judge:

The Defendant, Carol Clinton, is charged in a one-count indictment with illegally reentering the United States subsequent to deportation in violation of 8 U.S.C. § 1326 ("section 1326"). Defendant now moves to dismiss the indictment on the ground that he was illegally deported after a fundamentally unfair proceeding that deprived him of administrative and judicial review in violation of the Due Process Clause of the Fifth Amendment. The motion is GRANTED.

## I. BACKGROUND

Defendant is a citizen of Barbados who was admitted to the United States as a Lawful Permanent Resident in 1982. He

was fifteen years old at the time. On August 19, 1993, Defendant pleaded guilty to Attempted Criminal Possession of Stolen Property in the Fifth Degree, a Class B Misdemeanor, and was sentenced to ninety days of imprisonment. On October 15, 1995, Defendant pleaded guilty to Attempted Grand Larceny in the Third Degree, a Class E felony, and was sentenced to one year of imprisonment.

On May 10, 1996, the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Defendant, citing his convictions as crimes "involving moral turpitude," including an "aggravated felony." On July 8, 1997, an Immigrant Judge ("IJ") ordered Defendant deported to Barbados. At the time of his hearing before the IJ, Defendant was married to a U.S. citizen, and his mother had, since arrival, become a U.S. citizen.

Defendant appealed the IJ's decision on December 3, 1998. Five days later, the Board of Immigration Appeals ("BIA") dismissed the appeal.

Both the IJ and the BIA erroneously told Defendant that he was ineligible for discretionary relief from removal under former section 212(c) of the Immigrant and Nationality Act, 8 U.S.C. § 1101 *et seq.* ("IN"), which permitted an alien to seek a waiver of deportation under specified conditions applicable to Defendant.[1] 8 USC § 1182(c) (repealed by IIRIRA § 304(b), 110 Stat. at 3009–57, Sept. 30, 1996) ("section 212(c)"). Their conclusion was based upon a then-prevalent misinterpretation of two 1996 statutory changes to the INA, which repealed section 212(c).[2]

---

1. Former section 212(c) had been interpreted to authorize any resident alien with at least seven years of uninterrupted permanent residence in the United States and who had spent fewer than five years in prison after being convicted of an offense to seek waiver of

removal from the Attorney General. *See* 8 U.S.C. § 1182(c); *INS. v. St. Cyr*, 533 U.S. 289, 295, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001).

2. Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub. L. No.

Defendant's counsel apparently shared this misinterpretation.[3] The Supreme Court has since clarified that Section 212(c) relief was indeed available to the Defendant. *See INS v. St. Cyr,* 533 U.S. 289, 326, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001) (holding that section 440(d) of the AEDPA—which repealed section 212(c)—could not be applied retroactively to deny section 212(c) relief to an alien who pleaded guilty to a crime prior to 1996). The government subsequently implemented procedures for immigrants to reopen their removal cases in light of the Supreme Court's ruling. *See* 8 C.F.R. § 1003.44(k).

Defendant was ordered to surrender on October 27, 1999, but failed to do so. His bond was cancelled on December 20, 1999. A warrant for his deportation was entered on January 21, 1999, but he failed to surrender. The notice to surrender, however, was not sent to Defendant or his attorney. In July 2006, the fugitive operations team located Defendant. He was deported on August 11, 2006.

On or about February 23, 2009, Immigration and Customs Enforcement ("ICE") was informed that Defendant was in the United States when he was arrested in Brooklyn, New York. On March 19, 2009, Defendant was indicted for illegal reentry after removal in violation of 8 USC §§ 1326(a) & (b)(2). Defendant now moves to dismiss that indictment.

## II. *DISCUSSION*

Under 8 U.S.C. § 1326(a), it is a crime for a deported or removed alien to enter, attempt to enter, or be found in the United States. An alien can defend against this charge by challenging the validity of the deportation order upon which the charge is predicated. *United States v. Gonzalez–Roque,* 301 F.3d 39, 45 (2d Cir.2002). To do so, however, an alien must "[demonstrate] that (1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived [him] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." 8 U.S.C. § 1326(d) ("Section 1326(d)"). Here, Defendant seeks to attack collaterally the validity of the underlying deportation order.

### 1. *Exhaustion of Administrative Remedies*

■ Defendant fulfilled the first requirement of Section 1326(d) by appealing the IJ's 1997 deportation order to the BIA. *See United States v. Garcia,* No. 08 cr. 32(ARR), 2008 WL 3890167, at *3 (E.D.N.Y. Aug. 19, 2008) (exhaustion under section 1326(d) "generally entails appealing the IJ's order of removal to the BIA"). The Government contends that while Defendant satisfied the traditional means of exhausting his administrative remedies, he should have availed himself of a procedure generated more than two years after the BIA denied his appeal by reopening his case pursuant to 8 C.F.R. § 1003.44. In other words, it argues that to attack collaterally his deportation, Defendant was obligated to stay current on his remedies, continually checking whether they remained exhausted. However, the Government cites no authority for this novel proposition, and I reject it on the facts presented here. Defendant clearly exhausted the remedies available to him at

---

104–208, 110 Stat. 3009, § 304(B) (1996); Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214, § 440(d) (1996).

**3.** He acknowledged before the IJ that there was "not very much" Defendant could do to prevent his deportation. (Affirmation of Julia L. Gatto sworn to May 11, 2009, Ex. A at 10.)

the time of his deportation proceedings, after the IJ, the BIA, and his lawyer all effectively told him there was nothing more he could do.

 Moreover, even if the exhaustion prong of Section 1326(d) did require Defendant to bring a motion to reopen pursuant to 8 C.F.R. § 1003.44, Defendant's failure to do so here would be excused. Although the statutory exhaustion requirement is strictly construed, see U.S. v. Sosa, 387 F.3d 131, 136 (2d Cir.2004) (emphasizing mandatory nature of statutory exhaustion requirements), see also Theodoropoulos v. INS, 358 F.3d 162, 172 (2d Cir.2004) (futility excuses exhaustion only where administrative procedures cannot provide relief), the Court of Appeals has held that "the [administrative] exhaustion requirement [of Section 1326(d)(1) ] must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal," Sosa, 387 F.3d at 136. Absent such an exception, aliens subject to deportation could not collaterally attack proceedings that were "fundamentally unfair" insofar as they denied the aliens an opportunity for judicial review. Id. Accordingly, "[a] failure to exhaust administrative remedies bars collateral review of a deportation proceeding under Section 1326(d)(1) ... only where an alien's waiver of administrative review was knowing and intelligent." Id. at 137. In Sosa, the court held the exhaustion requirement excused "because Sosa's waiver of his right to an administrative appeal was not knowing and intelligent," as he "was not informed of his right to apply for Section 212(c) relief." Id. In Calderon, the Court of Appeals further noted that the argument in favor of excusing an alien's failure to exhaust was "sig-

nificantly bolstered" where "[n]ot only was [the alien] not informed that he had an opportunity to apply for section 212(c) relief, he was explicitly told by the IJ and his counsel that he was barred from doing so." U.S. v. Calderon, 391 F.3d 370, 375 (2d Cir.2004).

Sosa and Calderon control the result here. Because the IJ, the BIA, and his attorney effectively told Defendant that statutory relief was unavailable, his failure to move to reopen the case pursuant to section 1003.44 in order to seek section 212(c) relief was not a knowing and intelligent waiver of the remedy. Defendant was misinformed by each of the players in his immigration proceedings and was not made aware of the possibility of obtaining such relief until now. As the Court of Appeals has noted "[t]he fact that an administrative body told him that no such relief existed is a powerful deterrent from seeking judicial relief." U.S. v. Lopez, 445 F.3d 90, 98 (2d Cir.2006). Although the Lopez Court found this misinformation effectively denied the alien judicial review under Section 1326(d)(2), such circumstances also bar knowing and intelligent waiver of administrative remedies under Section 1326(d)(1).[4] After the IJ, the BIA, and his attorney told Defendant that there was nothing more he could do to challenge his deportation, he cannot be said to have knowingly waived the subsequent availability of 212(c) relief.

Therefore, even if Defendant had not exhausted his administrative remedies by appealing the decision of the IJ to the BIA, that failure would be excused, and the first prong of Section 1326(d) would be satisfied, permitting Defendant attack collaterally his deportation order,

---

**4.** See, e.g., Sosa, 387 F.3d at 136 (noting that "an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid.")

### 2. Deprivation of Opportunity for Judicial Review

█ Under the second prong of Section 1326(d), this Court must determine, "whether judicial review was realistically available to [Defendant]-that is, whether defects in the administrative proceeding otherwise foreclosed judicial review." *Lopez,* 445 F.3d at 96. The government argues that Defendant was not denied the opportunity for judicial review under § 1326(d)(2) because the length of time between the issuance of Defendant's deportation order and his removal gave him ample opportunity to discover the availability of habeas review and to file a habeas petition seeking section 212(c) relief. The Court disagrees.

█ Although "[t]he availability of habeas review is sometimes deemed to constitute an opportunity for judicial review," *United States v. Copeland,* 376 F.3d 61, 68 (2d Cir.2004), "where no *realistic opportunity* for judicial review by way of habeas review existed, an alien' s failure to seek such review will not be deemed to preclude a collateral attack on a deportation order under Section 1326(d)(2)," *Id.* at 68–69 (emphasis added). *See also Calderon,* 391 F.3d at 375; *Sosa,* 387 F.3d at 137. Furthermore, "[w]hile the interval of time in which it is realistically possible for an alien to seek judicial review may be quite short where the alien has not received misinformation, the analysis differs where the government affirmatively misleads an alien about the availability of relief." *Lopez,* 445 F.3d at 96. In this case, the IJ, the BIA, and Defendant's attorney erroneously told Defendant that relief was not available to him under section 212(c). As in *Lopez,* "[h]ad the IJ (and subsequently the BIA) not provided erroneous information to [Defendant] about the legal availability of § 212(c) relief, it might have occurred to [Defendant] to look for other remedies at law. The fact that an administrative body told him that no such relief existed is a powerful deterrent from seeking judicial relief." *Id.* The *Lopez* court also noted that "[w]e did not find Copeland's two-year delay in seeking to exhaust his administrative remedies unreasonable where he had been misinformed by the IJ. This reasoning is equally applicable to Lopez's failure to seek judicial review in the eighteen months between his final order of deportation and his deportation." *Id.* This logic is applicable here, too. Defendant was told at every step of his proceedings, by his attorney, the IJ, and the BIA, that section 212(c) relief was not available to him. Relief did not become available to him for several years, and when it did, there is no indication in the record that Defendant was so informed by any of these parties or anyone else.

Accordingly, this Court finds that because his attorney, the IJ, and the BIA erroneously told Defendant that he could not obtain section 212(c) relief, judicial review was not realistically available to him.

### 3. Fundamental Unfairness

Finally, section 1326(d)(3) requires Defendant to demonstrate that the deportation proceeding was fundamentally unfair. This provision requires a showing of "both a fundamental procedural error and prejudice resulting from that error." *United States v. Perez,* 330 F.3d 97, 104 (2d Cir. 2003) (quoting *United States v. Fernandez–Antonia,* 278 F.3d 150, 159 (2d Cir. 2002)). "[A] failure to advise a potential deportee of a right to seek Section 212(c) relief can, if prejudicial, be fundamentally unfair within the meaning of Section 1326(d)(3)." *Copeland,* 376 F.3d at 71. "[P]rejudice is shown where there is a reasonable probability that, but for the IJ's unprofessional errors, the alien would have been granted Section 212(c) relief."

*Id.* at 73. " '[A] reasonable probability is a probability sufficient to undermine confidence in the outcome.' " *United States v. Scott,* 394 F.3d 111, 118 (2d Cir.2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)) (alteration omitted).

■ In *Strickland,* the Supreme Court stated that "[t]he governing legal standard plays a critical role in defining the question to be asked in assessing ... prejudice." 466 U.S. at 695, 104 S.Ct. 2052, 80 L.Ed.2d 674. Here, the standard against which prejudice is to be measured is the IJ's broad discretion to grant Section 212(c) relief. In analyzing whether an alien suffered prejudice under section 1326(d)(3) resulting from an IJ's failure to consider his or her application for Section 212(c) relief, district courts must balance "the adverse factors evidencing an alien's undesirability as a permanent resident with the social and humane considerations presented in his behalf to determine whether the granting of Section 212(c) relief appears in the best interests of this country." *Sosa,* 387 F.3d at 138 (citations and internal quotation marks omitted). "Adverse factors include: the nature and circumstances of the deportation ground at issue, the presence of additional immigration law violations, [the defendant's] criminal record and its nature, seriousness and recency, and other evidence indicative of the defendant's bad character or undesirability as a permanent resident." *Lovell v. I.N.S.,* 52 F.3d 458, 461 (2d. Cir.1995). "Favorable considerations include: family ties within this country; [longtime] residence ..., hardship to the [defendant] and [defendant's] family upon deportation, Armed Forces service, employment history; community service, property or business ties, evidence [showing] good character, and in case of one convicted of criminal conduct, proof of genuine rehabilitation." *Id.*

Here, the favorable factors outweigh the adverse factors. Defendant was a Legal Permanent Resident of the United States at age fifteen. He was educated and raised in large part in this country. His family members—including his mother, step-father, siblings, and wife—are in the United States. He has two children, both of whom appear to be citizens of and reside in the United States. Those children have depended on Defendant for financial and paternal support. He has been regularly employed in this country, first as a messenger, later as the owner of a DJ business. It does not appear that Defendant has any significant ties to Barbados. Those ties are all here, in the United States. (*See* Affirmation of Julia L. Gatto sworn to May 11, 2009, ¶ 4.)

The factors weighing against Defendant are serious, but outweighed. Defendant was arrested four times between 1993 and 1995 in connection with incidents in which he and friends took stolen vehicles for "joy rides." (*Id.*) He served a year in prison pursuant to his 1995 conviction for attempted grand larceny in the third degree. (*Id.*) Since that time-nearly fifteen years ago, Defendant has been convicted of no further crimes. While it does appear that he neglected to resolve his immigration status after an order was issued for his deportation, it is not clear that Defendant was ever sent a surrender notice, (*See* Affidavit of David Barnett sworn to June 22, 2009; Affidavit of Carol Clinton sworn to June 22, 2009), and Defendant's apparent neglect in this regard is countered by the substantial factors favoring relief under section 212(c).

Accordingly, the Court finds that there is a reasonable probability that, but for the errors that permeated Defendant's earlier

immigration proceedings, Defendant would have been granted Section 212(c) relief.

### III. *CONCLUSION*

■ For the foregoing reasons, the Court concludes that the Defendant has sustained his burden of establishing each of the three prongs of 8 U.S.C. § 1326(d) required for a successful collateral attack upon his 1997 deportation order. Accordingly, the Court directs that the indictment be DISMISSED. The Clerk of the Court is directed to enter judgment accordingly.