In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-2082

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

OSCAR CALAN-MONTIEL,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 19-20013 — **Michael M. Mihm**, *Judge.*

———————————

ARGUED JULY 7, 2021 — DECIDED JULY 13, 2021

———————————

Before EASTERBROOK, KANNE, and KIRSCH, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Oscar Calan-Montiel, a citizen of Mexico, entered the United States without color of legal right to be here. He was caught in 2010 and ordered removed. Federal authorities returned him to Mexico in 2012. He came back, again evading inspection at the border, and was caught again in 2019. This time he was prosecuted under 8 U.S.C. §1326, a statute that applies to aliens who reenter the United States, without permission, after a removal order. He pleaded

guilty and was sentenced to about 16 months in prison. The plea reserved the right to argue on appeal that his first removal was unlawful and that the criminal prosecution should have been dismissed.

A removal order that serves as the basis of a prosecution under §1326 is subject to collateral attack only if the alien demonstrates that:

> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

> (3) the entry of the order was fundamentally unfair.

8 U.S.C. §1326(d). Calan-Montiel contends that his removal order was "fundamentally unfair" because the agency lacked jurisdiction, and he asks us to overlook his noncompliance with the first two statutory requirements.

*Pereira v. Sessions*, 138 S. Ct. 2105 (2018), supplies the basis of Calan-Montiel's attack on the agency's jurisdiction. Removal proceedings begin with a Notice to Appear, see 8 U.S.C. §1229(a)(1), and the statute sets out information that the notice must contain. One piece of required information is the date for the alien's initial appearance before an immigration judge. For many years employees responsible for initiating removal proceedings regularly omitted that date, supplying it in a follow-up notice. *Pereira* and its successor *Niz-Chavez v. Garland*, 141 S. Ct. 1474 (2021), hold that all of the required information must be in one document. But what follows from the use of multiple documents? *Ortiz-Santiago v. Barr*, 924 F.3d 956 (7th Cir. 2019), holds that §1229(a)(1) is a claims-processing rule, whose benefits can be waived or

forfeited if not timely asserted. See also, e.g., *Haiyan Chen v. Barr*, 960 F.3d 448 (7th Cir. 2020).

Calan-Montiel wants us to overrule *Ortiz-Santiago* and adopt a jurisdictional characterization of the statute. But none of the courts of appeals treats noncompliance with the one-document rule as a jurisdictional defect in a removal proceeding, and we are not tempted to create a conflict among the circuits on this issue. Our most recent decision declining what seems to be a tsunami of requests to overrule *Ortiz-Santiago* is *Mejia-Padilla v. Garland*, No. 20-1720 (7th Cir. June 29, 2021). This subject has been fully worked over in the Seventh Circuit. Unless instructed otherwise by the Supreme Court, we shall continue to treat §1229(a)(1) as a claims-processing requirement.

What's more, Calan-Montiel could not benefit from a decision to overrule *Ortiz-Santiago*, for he would still not meet even one of the three statutory requirements for a collateral attack on the removal order. Consider §1326(d)(3), which requires the alien to show that the removal order was "fundamentally unfair."

There's nothing unfair, fundamentally or otherwise, about using two documents to provide information. Litigation often requires litigants to consult multiple documents to identify issues, hearing dates, and other important matters. A complaint commencing a suit in federal court does not notify the defendant about the initial hearing date, but no one thinks that this makes the litigation fundamentally unfair. *Pereira* and *Niz-Chavez* hold that the language of §1229(a)(1) requires the agency to supply particular information in one document, but the Justices did not say that a statute allowing a sequential presentation would be unfair. The most one can say about the

way the agency initiated the proceedings in 2010 is that a bureaucrat made a mistake—either by omitting the hearing date from the initial notice, or by omitting other information from a later notice setting the hearing date. Errors in the implementation of technical statutes are a long distance from "fundamentally unfair" proceedings. *United States v. Manriquez-Alvarado*, 953 F.3d 511, 514 (7th Cir. 2020), makes this very point about the interaction of *Pereira* and §1326(d)(3).

Suppose this, too, were wrong, and that every failure to comply with §1229(a) makes a removal proceeding fundamentally unfair. Collateral review depends on two additional requirements. Calan-Montiel acknowledges that he has not satisfied either one, but he asks us to excuse his noncompliance. Effectively, he wants us to treat §1326(d)(3) as the *only* requirement for a collateral attack on a removal order. But *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), holds that an alien must satisfy all three conditions. Federal courts cannot create equitable exceptions to statutes.

According to Calan-Montiel, the agency never furnished him with a date for his removal hearing. We know that he did not attend and was ordered removed in his absence. That might be because a notice was not sent, because Calan-Montiel had not kept his address up to date, because a correctly addressed notice miscarried in the mails, or because Calan-Montiel decided that he lacked a defense to removal and so did not think attendance worthwhile. We need not determine which of these possibilities occurred, for Calan-Montiel does not deny that he had actual knowledge of the removal order. He could have asked the agency to reopen the proceedings, see 8 U.S.C. §1229a(b)(5)(C)(ii), but did not. He could have made that request even after being returned to Mexico. He

could have sought judicial review before or after his removal. But he did not do that either. Instead he returned by stealth. That strategy makes it impossible to satisfy §1326(d), even if the agency erred in failing to send a proper notice of the hearing's date. See *United States v. Hernandez-Perdomo*, 948 F.3d 807 (7th Cir. 2020).

AFFIRMED