24-3086-cr
*United States of America v. Manuel Zumba Mejia*

# In the
# United States Court of Appeals
## for the Second Circuit

————

AUGUST TERM 2025

No. 24-3086-cr

UNITED STATES OF AMERICA,
*Appellant,*

*v.*

MANUEL ZUMBA MEJIA,
*Defendant-Appellee.*

————

Appeal from the United States District Court for the
Southern District of New York

————

ARGUED: FEBRUARY 10, 2026
DECIDED: APRIL 9, 2026

————

Before: CABRANES, SULLIVAN, *Circuit Judges*, and GONZALEZ, *District Judge*.[*]

---

[*] Judge Hector Gonzalez, of the United States District Court for the Eastern District of New York, sitting by designation.

_____

The United States of America appeals from an October 29, 2024 order of the United States District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*) granting Defendant-Appellee Manuel Zumba Mejia's motion to dismiss a criminal information. The Government filed a timely notice of appeal on November 25, 2024, invoking this Court's jurisdiction pursuant to 18 U.S.C. § 3731.

The Government charged Mejia by complaint with aggravated illegal reentry, in violation of 8 U.S.C. §§ 1326(a) and (b)(2). Section 1326(d), in turn, provides that a defendant charged with illegal reentry "may not challenge the validity of" his prior deportation order "unless" that defendant satisfies three statutory requirements. Relying on the law of the Circuit established in *United States v. Sosa*, 387 F.3d 131 (2d. Cir. 2004), the District Court first held that Mejia's original deportation proceeding was fundamentally unfair under § 1326(d)(3) because the immigration judge misled him in violation of due process by incorrectly stating he was ineligible for voluntary departure. The District Court then concluded that Mejia had effectively satisfied §§ 1326(d)(1) and (2) because his failure to appeal resulted from the immigration judge's misleading statements, rendering his waiver of appeal not knowing and intelligent.

The Supreme Court has settled this matter otherwise, holding unanimously in *United States v. Palomar-Santiago*, 593 U.S. 321 (2021), that § 1326(d)'s requirements are "mandatory," and that "a court may not excuse a failure to exhaust," *id.* at 326, 329. This holding squarely abrogates our prior rule under *Sosa* and its progeny, which had

permitted defendants to bypass § 1326(d)'s exhaustion and deprivation-of-judicial-review requirements. Bound as we are by the judgments of the Supreme Court, we hold that Mejia was barred from collaterally challenging his underlying removal order because he failed to satisfy those requirements, and the statute does not permit a court to excuse that failure.

Accordingly, we **REVERSE** the district court's order granting Mejia's motion to dismiss and **REMAND** for further proceedings consistent with this opinion.

————

MICHAEL D. MAIMIN (Jorja N. Knauer, *on the brief*), Assistant United States Attorneys, *for* JAY CLAYTON, United States Attorney for the Southern District of New York, *Appellant*.

SARAH BAUMGARTEL, Federal Defenders of New York, Inc. Appeals Bureau, *for Defendant-Appellee*.

————

JOSÉ A. CABRANES, *Circuit Judge*:

The Reentry of Removed Aliens Act, codified at 8 U.S.C. § 1326, makes it a felony for a noncitizen who has been previously deported

to reenter the United States without authorization. To secure a conviction, the Government must prove a defendant was previously removed from the country—a fact usually conclusively established by an order of removal from a prior administrative proceeding before an Immigration Judge ("IJ"). A defendant can, however, collaterally attack the validity of the original removal order to rebut the satisfaction of that element. Finally, because the prior removal order serves as an element of the criminal offense, subsection (d) of the statute provides the sole mechanism by which a defendant may collaterally attack its validity in the context of a reentry prosecution.[2]

We recognized in *United States v. Sosa*, 387 F.3d 131 (2d. Cir. 2004), a limited exception that excuses a defendant from these requirements when a defendant's waiver of administrative review was not "knowing and intelligent."[3] Since that decision, the Supreme Court held in *United States v. Palomar-Santiago*, 593 U.S. 321 (2021), that all three requirements set forth in § 1326(d) are mandatory for a defendant to meet before he may collaterally challenge his underlying

---

[2] Section 1326(d) provides, in relevant part, that these requirements are: "(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."

[3] 387 F.3d at 136, 139.

removal order, and that no court may excuse a defendant's failure to satisfy any one of them.[4]

Today we consider whether the Supreme Court's decision in *Palomar-Santiago* abrogates our prior interpretation of § 1326(d) in *Sosa*. We hold that it does. The conflict between *Sosa* and *Palomar-Santiago* is irreconcilable: *Sosa* held that courts may excuse a failure to exhaust; *Palomar-Santiago* holds that they may not. Our prior rule is therefore abrogated.[5]

## BACKGROUND

In this case, the Government appeals from an October 29, 2024 order of the United States District Court for the Southern District of New York (Vincent L. Briccetti, *Judge*) applying *Sosa* and granting Defendant-Appellee Manuel Zumba Mejia's motion to dismiss.

Mejia, a native and citizen of Ecuador, entered the United States without lawful authority around 1999. In 2009, he was arrested for shaking his infant daughter and pleaded guilty to reckless assault of a child under N.Y. Penal Law § 120.02, for which he was sentenced to three years imprisonment.

---

[4] 593 U.S. at 328–29.

[5] The Ninth Circuit reached the same conclusion on nearly identical facts in *United States v. Portillo-Gonzalez*, holding that *Palomar-Santiago* foreclosed a defendant's collateral challenge where the IJ had misinformed him about his eligibility for voluntary departure, and that the analogous line of Ninth Circuit precedent did not survive *Palomar-Santiago.* 80 F.4th 910, 918 (9th Cir. 2023).

5

On September 7, 2010, Mejia appeared before an IJ who advised him of his right to counsel at no government expense and asked whether he wanted time to find a lawyer. Mejia declined. Mejia indicated he wanted "voluntary departure,"[6] but the IJ told him he was ineligible "because of [his] crime" and, because he was imprisoned, he could not "actually leave whenever [he] would want."[7]

The IJ instead offered Mejia deportation. Mejia responded "[T]hat is what I want, to be deported back to my country. I don't want to be here." *Id.* The IJ granted this request. During the proceeding, Mejia confirmed that he understood his right to counsel and to appeal; he also acknowledged that he had received a list of free attorneys, as well as the requisite immigration forms. When asked specifically whether he accepted the decision to be deported or wished to appeal, Mejia responded by accepting the decision and expressly waived his

---

[6] "Voluntary departure" is a form of discretionary relief that allows a noncitizen to leave the country voluntarily, without a formal order of deportation. *See Thapa v. Gonzalez*, 460 F.3d 323, 327 (2d Cir. 2006).

[7] App'x, Dkt. No. 37.1, at A.317 ("A.317"). At the time of Mejia's 2010 deportation hearing, the IJ correctly advised him that he was ineligible for voluntary departure because his prior conviction for reckless assault of a child constituted a "crime of violence" and therefore an aggravated felony under then-governing law. *See Blake v. Gonzales*, 481 F.3d 152, 162 (2d Cir. 2007); 8 U.S.C. §§ 1101(a)(43)(F), 1229c(a)(1), 1227(a)(2)(A)(iii). That changed when the Supreme Court held in *Borden v. United States*, 593 U.S. 420 (2021), that offenses requiring a *mens rea* of recklessness no longer qualify as crimes of violence under 18 U.S.C. § 924(e)(2)(B)(i), which contains a statutory definition of "violent felonies" that was "relevantly identical" to 18 U.S.C. § 16(a), the applicable definitional statute here, *see* 593 U.S. at 427, 445.

right to appeal.[8] He was removed to Ecuador on September 23, 2011, more than a year after his removal proceeding.

About ten years later, Mejia returned to the United States from Ecuador without obtaining the "express[] consent[]" of the Attorney General or the DHS Secretary to reapply for admission.[9] On October 3, 2021, Mejia was arrested in Westchester County, New York for driving while intoxicated. Then, on December 15, 2022, the Government charged Mejia by complaint with aggravated illegal reentry, in violation of 8 U.S.C. § 1326(a) & (b)(2).[10] Based on that complaint, Mejia was arrested on January 5, 2023, and on May 2, 2024,

---

[8] The IJ asked Mejia: "Do you accept that decision, or do you wish to appeal it," after which Mejia responded that he accepted the decision. The IJ then asked again, "You are waiving your right to appeal, correct?" Mejia answered, "Yes." A.318.

[9] *See* n.11, *post*.

[10] Section 1326(a) and (b) provides in relevant part:

> (a) …any alien who— (1) has been . . . removed or has departed the United States while an order of . . . deportation[] or removal is outstanding, and thereafter (2) enters . . . the United States, unless (A) prior to his reembarkation . . . the Attorney General has expressly consented to such alien's reapplying for admission . . . shall be fined under title 18, or imprisoned not more than 2 years, or both.

> (b) Criminal penalties for reentry of certain removed aliens . . . (2) [any alien] whose removal was subsequent to a conviction for commission of an aggravated felony . . . shall be fined under such title, imprisoned not more than 20 years, or both.

7

he waived indictment and was charged by Information with one count of aggravated illegal reentry. He pleaded not guilty.

Mejia moved to dismiss the Information, collaterally challenging his removal order from September 2010.[11] He argued that due to an intervening Supreme Court decision of 2021, *Borden v. United States*, his 2009 conviction for shaking his infant daughter—to which he had pleaded guilty in 2010—did not qualify as a "crime of violence."[12] Because that conviction was not a crime of violence, Mejia contended, he actually had been eligible for voluntary departure at the time of his September 2010 removal proceedings, making the IJ's failure to properly advise him of that eligibility a due process violation.

It is undisputed that Mejia failed to exhaust one of the administrative remedies available to him in 2010, namely, an appeal to the Board of Immigration Appeals ("BIA"). *See* 8 U.S.C. § 1326(d)(1). Following his 2010 removal proceeding, Mejia sought no type of

---

[11] In U.S. immigration law, "deportation" historically referred to the expulsion of a noncitizen already present within the United States, while "exclusion" referred to the denial of entry at a port of entry—each governed by distinct legal proceedings. In 1996, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), which consolidated both processes into a single unified framework known as "removal proceedings," effective April 1, 1997. Accordingly, "removal" is now the controlling legal term encompassing all forms of expulsion, and "deportation" survives primarily as a colloquial reference to one subset of that broader process. *See* Exec. Off. for Immigr. Rev., U.S. Dep't of Just., Immigr. Ct. Prac. Manual §§ 4.1, 7.2 (2025).

[12] *See Borden*, 593 U.S. at 427, 445; *see also* n.7, *ante*.

8

review, either administrative or judicial, and was removed about one year later, in September 2011.[13] He argued that his failure to exhaust should be excused because in 2010 the IJ failed to advise him of his eligibility for voluntary departure, rendering his appeal waiver not knowing and intelligent.

The Government, in its Opposition to the Defendant's Motion to Dismiss, contended that Mejia's collateral challenge was barred because he clearly failed to satisfy all three mandatory requirements of § 1326(d), and that *Palomar-Santiago* did not allow a court to excuse that failure.[14]

Relying on the law of the Circuit established in *Sosa*, the District Court granted Mejia's motion due to a fundamental procedural error and accompanying prejudice under § 1326(d)(3). The Court found it undisputed that Mejia had the right to appeal his removal order to the BIA; that the IJ repeatedly advised him of this right; and that Mejia had

---

[13] As relevant here, under 8 C.F.R. § 1003.38(b), a Notice of Appeal (Form EOIR-26) must be filed with the BIA within 30 calendar days after the IJ renders an oral decision or mails a written decision. *See also* Exec. Off. for Immigr. Rev., U.S. Dep't of Justice, Bd. of Immigr. Appeals Prac. Manual, ch. 4.5 (Appeal Deadlines). If no appeal is filed within this period, the IJ's decision becomes final. 8 C.F.R. § 1003.39 ("Except when certified to the Board, the decision of the Immigration Judge becomes final upon waiver of appeal or upon expiration of the time to appeal if no appeal is taken[,] whichever occurs first."). Mejia was not deported until approximately one year after his removal hearing, having remained in state custody with ample opportunity to file a timely appeal within the 30-day window. He chose not to do so.

[14] A.323–25 (citing 593 U.S. 321 (2021)).

9

expressly declined each time. The Court also determined that, following the original removal hearing, nothing had prevented Mejia from pursuing that remedy. Nevertheless, relying on this Circuit's precedent and the exception established in *Sosa*,[15] the Court excused Mejia's failure to appeal because the IJ's advice, based on the IJ's understanding of the law in 2010, rendered Mejia's waiver not "knowing and voluntary," such that Mejia "did not fully comprehend the nature of the proceeding."[16]

In reaching this conclusion, the District Court rejected the Government's primary argument that *Palomar-Santiago* abrogated *Sosa* and its progeny. The Court instead reasoned that *Palomar-Santiago* was "a purely statutory decision" that declined to reach constitutional arguments.[17] According to the District Court, nothing in *Palomar-Santiago* vitiated the requirement "for an exception to [§ 1326(d)'s] exhaustion requirement if a prior proceeding violated due process guarantees."[18]

The Government timely appealed.

---

[15] 387 F.3d at 136 ("[T]he exhaustion requirement must be excused where an alien's failure to exhaust results from an invalid waiver of the right to an administrative appeal.").

[16] *See United States v. Mejia*, 2024 WL 4604644, at *8 (S.D.N.Y. Oct. 29, 2024) (citing *Sosa*, 387 F.3d at 136–37; *United States v. Calderon*, 391 F.3d 370, 375 (2d Cir. 2004)).

[17] *Mejia*, 2024 WL 4604644, at *8.

[18] *Id.*

10

**DISCUSSION**

Titled "Reentry of Removed Aliens," 8 U.S.C. § 1326 was initially enacted as part of the Immigration and Nationality Act of 1952,[19] which consolidated and codified federal immigration law. In its original form, the statute made it a felony for a deported alien to reenter the United States without authorization, carrying a maximum penalty of two years' imprisonment. These administrative proceedings under the immigration law naturally offer fewer procedural protections than criminal trials, although their outcomes can serve as the basis for criminal liability. This tension raised due process concerns that the Supreme Court addressed in 1987 in *United States v. Mendoza-Lopez*.[20] There, the Court held "that where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding."[21] It further concluded that the statute would not comport with due process if it allowed a criminal conviction for illegal reentry to rest on a deportation order obtained through fundamentally unfair

---

[19] Pub. L. No. 82-414, 66 Stat. 163.

[20] 481 U.S. 828, 829 (1987) ("Due process requires that a collateral challenge to the use of a deportation proceeding as an element of a criminal offense be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review.").

[21] *Id*. at 837–38.

proceedings.[22] Where defects in the proceeding foreclose such review, a collateral challenge must be permitted in the criminal case itself.

Critically, however, *Mendoza-Lopez* mandated only that some alternative means of review must exist. The decision did not detail the minimum due process requirements of such alternative means, nor did it specify a course of action. The basic holding of *Mendoza-Lopez* was merely that a constitutional violation would be found where an IJ permitted waivers of the right to appeal that were not "considered or intelligent" and failed to advise aliens of their eligibility for discretionary relief.[23]

In 1996, Congress enacted § 1326(d) to codify the Supreme Court's holding. The statute establishes specific requirements that a defendant must satisfy to mount a collateral attack on a prior deportation order when that order serves as a predicate element of an illegal reentry charge under which the defendant is currently being prosecuted.[24] Thus, § 1326(d) permits a collateral challenge to a prior removal order only where the defendant establishes that (1) he had exhausted available administrative remedies; (2) he was deprived of the opportunity for judicial review; and (3) the underlying removal

---

[22] *Id*. at 838.

[23] *Id*. at 838–40.

[24] These prerequisites were established to codify the holding in *Mendoza-Lopez*, "while preventing wholesale, time consuming attacks on underlying deportation orders." 139 Cong. Rec. 18,695 (1993) (statement of Sen. Robert Dole); 140 Cong. Rec. 28,440–41 (1994) (statement of Sen. John Smith).

order was fundamentally unfair.[25] In enacting this statutory scheme, Congress sought to balance the due process concerns recognized in *Mendoza-Lopez* against the need to prevent defendants from reflexively challenging their deportation orders as a matter of course. Put simply, Congress sought to guarantee each defendant *one* full and fair opportunity to challenge a removal order. But neither *Mendoza-Lopez* nor § 1326 entitles a defendant who neglected the remedies available to him a second opportunity to challenge that order collaterally in a later criminal proceeding.

Following the 1996 amendments to § 1326, our Circuit, and others, grappled with what the statute meant in practice. Our response came in *Sosa*, which held that for § 1326(d) to be "consistent" with *Mendoza-Lopez*, "[§ 1326's] exhaustion requirement must be excused where an alien's failure to exhaust results from" a "misunderstanding" or "lack of understanding" about the availability of relief.[26] Thus, under *Sosa*, an IJ's failure to advise an alien of available relief excused § 1326(d)(1)'s exhaustion requirement.[27] We also recognized that "an invalid waiver of the right to administrative exhaustion will often result from the same lack of understanding that renders a waiver of judicial review invalid."[28] But *Sosa* can be best understood as a statutory interpretation case. We read § 1326(d) to be

---

[25] 8 U.S.C. § 1326(d)(1)–(3).

[26] 387 F.3d at 136–37.

[27] *Id*. at 137.

[28] *Id*. at 136; *see* 8 U.S.C. § 1326(d)(2).

13

consistent with Congress's purpose in enacting it—namely, to codify *Mendoza-Lopez*.[29] That is an exercise in statutory interpretation, not constitutional analysis. And it would not make sense to read *Sosa* as incorporating a constitutional requirement from *Mendoza-Lopez* that *Mendoza-Lopez* itself never articulated.[30]

The same year we decided *Sosa*, we considered two additional cases, *United States v. Copeland*[31] and *United States v. Calderon*,[32] that further explained what was essentially a specific exception to § 1326(d)'s mandatory requirements. Together, *Sosa*, *Copeland*, and *Calderon* concluded that where an IJ failed to advise an alien of a potential basis for discretionary relief from removal, or affirmatively

---

[29] *See United States v. Johnson*, 391 F.3d 67, 73 (2d Cir. 2004) ("Far from being inconsistent with *Mendoza Lopez*, [8 U.S.C. § 1326(d)] is designed to carry out the Supreme Court's mandate for ensuring due process in any collateral attack on a deportation order.")

[30] To the extent *Sosa* rested on constitutional avoidance, the Supreme Court made clear in *Palomar-Santiago* that the canon of constitutional avoidance has no application where, as here, the statutory text is unambiguous. *Palomar-Santiago*, 593 U.S. at 328–29.

[31] In *United States v. Copeland*, 376 F.3d 61 (2d Cir. 2004), we held that an IJ's failure to inform an alien of eligibility for § 212(c) relief could constitute a fundamental procedural error, that habeas review must be realistic to satisfy § 1326(d)(2), and that exhaustion could be met through a motion to reopen, *id.* at 75.

[32] In *Calderon*, we applied and strengthened *Sosa*'s knowing-and-intelligent-waiver rule, holding that a defendant's failure to exhaust under § 1326(d)(1) would be excused where the IJ affirmatively misled him about his eligibility for discretionary relief. 391 F.3d at 376.

14

misinformed him, we would excuse compliance with all of § 1326(d)'s requirements.

That was the state of the law in this Circuit until 2021, when the Supreme Court rejected an analogous approach by the Ninth Circuit in *Palomar-Santiago*.[33] There, the Court considered whether defendants were excused from satisfying the first two requirements of § 1326(d) where the underlying removal was based on a conviction that did not actually render him removable. Writing for a unanimous Court, Justice Sotomayor explained that they were not, and that "[t]he Ninth Circuit's interpretation is incompatible with the text of § 1326(d)."[34] The Court reasoned, in no uncertain terms, that "[w]hen Congress uses mandatory language in an administrative exhaustion provision, a court may not excuse a failure to exhaust."[35] The Court further underscored that § 1326(d)'s requirements are connected by the conjunctive "and," meaning defendants must meet all three statutory requirements.[36] Rejecting any distinction between procedural and substantive errors on the part of the IJ, the Court emphasized that "[a]dministrative review of removal orders exists precisely so

---

[33] *See* 593 U.S. at 326–27.

[34] *Id*.

[35] *Id*. at 326 (internal quotation marks omitted).

[36] *Id*.; *see also Portillo-Gonzalez*, 80 F.4th at 917 ("Even assuming *arguendo* that the IJ's incorrect statement about Portillo-Gonzalez's eligibility for voluntary departure violated due process and rendered his removal proceedings 'fundamentally unfair,' that would not automatically or 'effectively' satisfy § 1326(d)'s other two requirements.").

15

noncitizens can challenge the *substance* of immigration judges' decisions."[37] Accordingly, an "immigration judge's error on the merits does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error."[38] In short, the Court clearly held that "[e]ach of the statutory requirements of § 1326(d) is mandatory"—a conclusion that several of our sister circuits have taken seriously.[39]

Here, it is undisputed that Mejia never appealed his initial removal order to the BIA, notwithstanding the fact that an administrative appeal was "available" to him. He therefore failed to exhaust his administrative remedies as required by § 1326(d)(1). And because the IJ correctly informed Mejia of his right to appeal—which

---

[37] 593 U.S. at 328 (emphasis added).

[38] *Id.*; *accord United States v. Flores-Perez*, 1 F.4th 454, 458 (6th Cir. 2021) (explaining that "even if [defendant's] removal was flawed, that error does not excuse [his] failure to comply with a mandatory exhaustion requirement because administrative review, and then judicial review if necessary, could fix [the] error, if any" (internal quotation marks omitted)).

[39] 593 U.S. at 329; *see also, e.g.*, *Portillo-Gonzalez*, 80 F.4th at 917–20; *United States v. Castillo-Martinez*, 16 F.4th 906, 916 (1st Cir. 2021) ("Castillo-Martinez nevertheless argues that if he can show that his counsel was ineffective, we should excuse his failure even where he failed to exhaust his ineffective assistance claim before the BIA. We do not accept his proposition."); *United States v. Calan-Montiel*, 4 F.4th 496, 498 (7th Cir. 2021) (dicta) ("Effectively, [the defendant] wants us to treat § 1326(d)(3) as the only requirement for a collateral attack on a removal order. But [*Palomar-Santiago*] holds that a[] [defendant] must satisfy all three conditions. Federal courts cannot create equitable exceptions to statutes.").

Mejia expressly waived—he was not "deprived . . . of the opportunity for judicial review" under § 1326(d)(2). Even assuming that the IJ's erroneous statement about voluntary departure rendered Mejia's removal proceedings "fundamentally unfair" under § 1326(d)(3), that error did not excuse Mejia's independent failure to satisfy §§ 1326(d)(1) and (2)—requirements that the statute does not permit a court to excuse.[40] Put differently, Mejia was required to satisfy all three statutory requirements to qualify for § 1326(d)'s exception; because Mejia failed to do so, "he remains subject to § 1326(d)'s general rule that he 'may not challenge the validity' of his predicate removal order."[41]

---

[40] *Palomar-Santiago*, 593 U.S. at 325–26; *accord United States v. Nunez*, 140 F.4th 1157, 1165 (9th Cir. 2025) ("[E]ven if [the defendant's] waiver were not 'considered and intelligent,' that alone would not excuse [the defendant's] failure to exhaust administrative remedies pursuant to § 1326(d)(1).").

[41] *Portillo-Gonzalez*, 80 F.4th at 917 (quoting 8 U.S.C. § 1326(d)). Mejia contends in the alternative that he should be excused from the administrative-exhaustion requirement because procedural defects in his deportation proceeding meant that "[n]o further administrative review was '*available*' to [him]" under § 1326(d)(1). Mejia Br. at 42 (emphasis added). But Section 1326(d)(1)'s exhaustion requirement turns on the functional "availab[ility]" of the relevant "administrative remedies"—not a defendant's subjective understanding of his rights. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) ("[T]he ordinary meaning of the word 'available' is 'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" (internal quotation marks omitted)). Where, as here, a defendant recognizes that an administrative remedy exists—here, the right to appeal—but elects not to pursue that remedy based on a misunderstanding, the remedy is nonetheless "accessible" and "capable of use" to provide relief. *See Mejia*, 2024 WL 4604644, at *7 (noting that the IJ told Mejia about his right to appeal and did not

17

## CONCLUSION

To summarize, we hold:

> (1) *Palomar-Santiago* abrogated *Sosa* and its progeny insofar as those cases excused defendants from satisfying the mandatory requirements of §§ 1326(d)(1) and (2); and

> (2) Mejia did not satisfy §§ 1326(d)(1) and (2) because he failed to exhaust his administrative remedies and expressly waived his right to appeal. He is therefore barred from collaterally challenging his underlying removal order.

Accordingly, we **REVERSE** the order of the District Court dismissing the Information and **REMAND** for further proceedings consistent with this opinion.

---

misrepresent "the availability of an appeal or the rules that govern administrative appeals.").