**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

PRAXEDIS SAUL PORTILLO-GONZALEZ, AKA Alex Ganes-Diarte, AKA Jose Omar Reyes-Hernan,

*Defendant-Appellant*.

No. 21-10260

D.C. No.
2:19-cr-01331-DJH-1

OPINION

Appeal from the United States District Court
for the District of Arizona
Diane J. Humetewa, District Judge, Presiding

Argued and Submitted November 17, 2022
Phoenix, Arizona

Filed August 31, 2023

Before: Jay S. Bybee, John B. Owens, and Daniel P. Collins, Circuit Judges.

Opinion by Judge Collins

# SUMMARY[*]

## Criminal Law

The panel affirmed the district court's judgment in a case in which Praxedis Saul Portillo-Gonzalez entered a conditional guilty plea to unlawful reentry by a previously removed alien, in violation of 8 U.S.C. § 1326, after the district court denied his motion under 8 U.S.C. § 1326(d) to dismiss the indictment.

Portillo-Gonzalez contended that his indictment should have been dismissed on the ground that the removal order underlying his unlawful reentry charge was invalid due to an error by the immigration judge ("IJ"), at his removal hearing, as to whether he was eligible for voluntary departure. Portillo-Gonzalez argued that, under controlling Ninth Circuit precedent, the IJ's error sufficed to establish that he satisfied all of the § 1326(d) requirements for collaterally challenging a removal order in the context of a § 1326 prosecution. While he acknowledged that the Supreme Court's decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), abrogated Ninth Circuit caselaw holding that such IJ errors may *excuse* an alien from satisfying certain of § 1326(d)'s requirements, Portillo-Gonzalez argued that it left undisturbed this court's related caselaw holding that such errors may serve to automatically establish that those requirements have been *met*.

The panel held that, in the respects relevant here, *Palomar-Santiago* abrogated that caselaw as well. Even

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

assuming *arguendo* that the IJ's incorrect statement about Portillo-Gonzalez's eligibility for voluntary departure violated due process and rendered his removal proceedings "fundamentally unfair" under 8 U.S.C. § 1326(d)(3), that would not automatically or "effectively" satisfy the requirement in 8 U.S.C. § 1326(d)(1) that the alien exhausted available administrative remedies, or the requirement in 8 U.S.C. § 1326(d)(2) that the deportation proceedings improperly deprived the alien of an opportunity for judicial review. The panel therefore concluded that Portillo-Gonzalez remains subject to § 1326(d)'s general rule that he may not challenge the validity of his predicate removal order.

## COUNSEL

Daniel L. Kaplan (argued), Assistant Federal Public Defender; Jon M. Sands, Federal Public Defender; Federal Public Defender's Office, Phoenix, Arizona; for Defendant-Appellant.

Timothy H. Courchaine (argued) and Ryan J. McCarthy, Assistant United States Attorneys; Krissa M. Lanham, Appellate Division Chief; Gary M. Restaino, United States Attorney; United States Attorney's Office, Phoenix, Arizona; for Plaintiff-Appellee.

## OPINION

COLLINS, Circuit Judge:

Defendant-Appellant Praxedis Saul Portillo-Gonzalez appeals from his conviction after a conditional plea of guilty to a single count of unlawful reentry by a previously removed alien in violation of 8 U.S.C. § 1326. Portillo-Gonzalez contends that his indictment should have been dismissed on the ground that the 2000 removal order underlying his prior removals was invalid due to an error by the immigration judge ("IJ"), at his removal hearing, as to whether he was eligible for voluntary departure. Portillo-Gonzalez argues that, under controlling Ninth Circuit precedent, the IJ's error sufficed to establish that he satisfied all of the statutory requirements for collaterally challenging a removal order in the context of a § 1326 prosecution. *See* 8 U.S.C. § 1326(d) (listing these requirements). Thus, while he acknowledges that the Supreme Court's decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021), abrogated Ninth Circuit caselaw holding that such IJ errors may *excuse* an alien from satisfying certain of § 1326(d)'s requirements, he insists that it left undisturbed our related caselaw holding that such errors may serve to automatically establish that those requirements have been *met*. Because we conclude that, in the respects relevant here, *Palomar-Santiago* abrogated that caselaw as well, we reject Portillo-Gonzalez's contentions and affirm the district court's decision and judgment.

# I

## A

Portillo-Gonzalez illegally entered in the United States in June 2000 near Sasabe, Arizona. On December 14, 2000, Portillo-Gonzalez was convicted in Arizona state court of one count of possession of drug paraphernalia and was sentenced to three years' probation. The next day, Portillo-Gonzalez was released from state custody into the custody of federal immigration authorities, and he was served with a "Notice to Appear" alleging that he was removable under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as an alien present in the United States without being admitted or paroled. On December 21, 2000, Portillo-Gonzalez appeared before an IJ, conceded that he was removable as charged, and was ordered removed to Mexico. Portillo-Gonzalez confirmed to the IJ that he did not want to appeal to the Board of Immigration Appeals ("BIA"), and he was removed that same day.

Portillo-Gonzalez subsequently re-entered the United States illegally multiple times, resulting in six additional removals in 2002, 2003, 2008, 2010, 2012, and 2017. During his time in the United States, Portillo-Gonzalez amassed a variety of additional criminal convictions, including six convictions in state court, from 2002–2019, for driving while impaired or under the influence; a state court conviction in 2010 for possession of drug paraphernalia; and two federal convictions in the District of Arizona in 2012 and 2016 for unlawful reentry by a previously removed alien in violation of 8 U.S.C. § 1326.

While Portillo-Gonzalez was still on supervised release from his 2015 federal conviction, he again unlawfully re-entered the United States on or about December 6, 2018. Based on this unlawful reentry, the U.S. Probation Office in February 2019 filed a petition to revoke Portillo-Gonzalez's supervised release. Thereafter, in November 2019, Portillo-Gonzalez was indicted for a third violation of § 1326. Specifically, the indictment alleged that Portillo-Gonzalez was previously removed on February 27, 2017 and that he was thereafter found in the United States in June 2019 without having obtained the express consent of immigration authorities to reapply for admission.

## B

Portillo-Gonzalez moved to dismiss the indictment on the ground that the removal order underlying his unlawful reentry charge under § 1326 was invalid. Section 1326(d) expressly authorizes such a collateral challenge pursuant to a 1996 statutory amendment enacted in response to the Supreme Court's decision in *United States v. Mendoza-Lopez*, 481 U.S. 828 (1987). In *Mendoza-Lopez*, the Court held that the then-existing version of § 1326 violated due process to the extent that it did not allow a collateral challenge to an underlying removal order that was issued during procedurally defective removal proceedings that "effectively eliminate[d] the right of the alien to obtain judicial review." *Id*. at 839; *see also id*. at 839 n.17. That constitutional defect was addressed in the following new subsection (d):

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection

(a)(1) or subsection (b) unless the alien demonstrates that—

(1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).[1]

Here, the predicate 2017 removal alleged in Portillo-Gonzalez's indictment rested on the reinstatement of his 2000 removal order. Portillo-Gonzalez argued that the 2000 order was "fundamentally unfair" within the meaning of § 1326(d)(3) because it was issued at a hearing during which the IJ had misinformed him concerning his potential eligibility for voluntary departure in lieu of removal. Specifically, the IJ told Portillo-Gonzalez at his 2000 removal hearing in Tucson that he could not be considered for voluntary departure unless he was then in possession of $5 to cover the cost of travel to Nogales, where he would be escorted to the border. After Portillo-Gonzalez told the IJ that he did not have $5 with him, the IJ ordered him to be

---

[1] Section 1326(a) defines the basic offense of unlawful reentry by a previously removed alien. Subsection (b) provides for enhanced penalties if certain additional elements are established, such as, for example, where the alien's prior removal "was subsequent to a conviction for commission of an aggravated felony." 8 U.S.C. § 1326(b)(2).

removed to Mexico.  In his motion to dismiss the indictment, Portillo-Gonzalez asserted that there was no such limitation on his ability to be considered for voluntary departure because the BIA had held in 1999 that an alien seeking voluntary departure before completion of removal proceedings "need not show that . . . he has the financial means to depart the United States." *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 817 (B.I.A. 1999).[2]  Portillo-Gonzalez further argued that the IJ's error was prejudicial because, had the IJ informed him that he "could ask for time to obtain the funds" to voluntarily depart, there was an adequate evidentiary basis to conclude that he would have been eligible for voluntary departure.

As to the additional requirements of § 1326(d)(1) and (d)(2) relating to exhaustion of remedies and deprivation of judicial review, Portillo-Gonzalez argued that, because he had been prejudiced by the IJ's "improper advisal," he was "excused" under Ninth Circuit precedent from having to satisfy those two requirements.

While Portillo-Gonzalez's motion was pending, the Supreme Court issued its decision in *United States v. Palomar-Santiago*, 141 S. Ct. 1615 (2021).  There, the Court held that "each of the statutory requirements of § 1326(d) is

---

[2] On appeal, Portillo-Gonzalez persuasively suggests that the IJ's error was apparently based on the application of an earlier regulation that was no longer in effect at the time of his hearing. *See* 8 C.F.R. § 244.1 (1996) (stating that an alien was eligible for voluntary departure if, *inter alia*, "the alien establishes that he/she is willing and has the *immediate means* with which to depart promptly from the United States" (emphasis added)); *see also* 62 Fed. Reg. 10312, 10377, 10382 (Mar. 6, 1997) (making extensive changes to immigration regulations in light of recent statutory amendments and effectively moving 8 C.F.R. § 244.1's language, as amended, to a new § 240.56 that would apply only to removal proceedings "commenced prior to April 1, 1997").

mandatory," and it expressly rejected our precedent holding that, in certain circumstances, "defendants are 'excused from proving the first two requirements' of § 1326(d)." *Id*. at 1620, 1622 (citation omitted). After receiving supplemental briefing concerning the import of *Palomar-Santiago*, the district court denied the motion, concluding that none of the three requirements of § 1326(d) were satisfied.

## C

After the district court denied Portillo-Gonzalez's motion to dismiss the indictment, Portillo-Gonzalez entered into a plea agreement with the Government that would resolve both his pending criminal case as well as the revocation of his supervised release from his 2015 conviction under § 1326. To assist in accomplishing that, the Government obtained a superseding indictment that (1) changed the predicate prior removal in Portillo-Gonzalez's current case from his 2017 removal to the 2012 removal that had been the predicate of his 2015 conviction; and (2) pushed back the date on which Portillo-Gonzalez was allegedly found in the United States from June 2019 to December 2018. Under the plea agreement, Portillo-Gonzalez expressly preserved his ability to appeal the denial of his motion to dismiss the original indictment.[3] *See* FED. R. CRIM. P. 11(a)(2).

---

[3] The parties have not contended that the subsequent filing of a superseding indictment has any effect on our ability to address Portillo-Gonzalez's appeal of the earlier denial of his motion to dismiss. Although the documents from Portillo-Gonzalez's 2012 removal are not in the record, that removal presumably was also based on the same underlying 2000 removal order that was the basis for the 2017 removal and that was the subject of the district court's decision. Because a ruling in Portillo-Gonzalez's favor on appeal would thus also invalidate the superseding indictment, the filing of that indictment did not moot the

With respect to Portillo-Gonzalez's conviction under § 1326, the district court on August 31, 2021 sentenced him to 42 months in prison, to run concurrently with his latest state conviction.    That sentence was well below the Guidelines range of 63–78 months and the plea agreement's binding sentencing cap of 78 months. *See* FED. R. CRIM. P. 11(c)(1)(C).  Portillo-Gonzalez was ordered to serve three years of supervised release after completing his prison term. His prior supervised release from his 2015 conviction was terminated, and the pending revocation proceedings from that case were dismissed.

Portillo-Gonzalez timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

## II

We review de novo the district court's denial of Portillo-Gonzalez's motion to dismiss the indictment.  *See United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015). In addressing whether Portillo-Gonzalez made a sufficient showing to satisfy the statutory requirements for a collateral challenge against his prior removal order, we begin by reviewing those requirements and the Supreme Court's recent analysis of them in *Palomar-Santiago*.

## A

Section 276 of the INA—which is widely known as "§ 1326" due to its classification to that section of the unenacted title 8 of the United States Code—criminalizes unlawful reentry by a previously removed alien.  *See* 8 U.S.C. § 1326(a).  As noted earlier, *see supra* at 6–7,

---

district court's earlier order denying Portillo-Gonzalez's motion to dismiss. *See United States v. Mendez*, 28 F.4th 1320, 1323 n.2 (9th Cir. 2022).

§ 1326 now contains a subsection that explicitly addresses the extent to which an alien being prosecuted for unlawful reentry under that statute may collaterally challenge the prior removal order on which the prosecution rests. Specifically, § 1326(d) first establishes the general rule that "[i]n a criminal proceeding under this section, an alien may *not* challenge the validity of the deportation order" that is an element of the offenses defined in § 1326(a) or (b). *See* 8 U.S.C. § 1326(d) (emphasis added). The statute then provides a limited exception to that rule under which an alien may establish the invalidity of the predicate removal order by showing that: (1) "the alien exhausted any administrative remedies that may have been available" to contest the order; (2) the deportation proceedings that led to the order "improperly deprived the alien of the opportunity for judicial review"; and (3) the removal order was "fundamentally unfair." *See id*. These three elements, particularly the second, serve to ensure that a collateral challenge will be authorized in any case in which *Mendoza-Lopez*'s due process holding would require it. *See Mendoza-Lopez*, 481 U.S. at 839 (holding that a collateral challenge during a criminal prosecution must be provided when the defendant makes a showing, not merely that there was a defect in the administrative proceedings, but *also* that, as a result, "the deportation proceeding effectively eliminate[d] the right of the alien to obtain judicial review").

In *Palomar-Santiago*, the Supreme Court held that, because these three "requirements are connected by the conjunctive 'and,'" it follows that "defendants must meet all three" to mount a successful collateral challenge to their removal order under § 1326(d). 141 S. Ct. at 1620–21. The Court therefore reversed our decision in that case, which had followed Ninth Circuit law that "excused" defendants from

proving the first two requirements in certain cases. *Id*. at 1620.

Specifically, in *Palomar-Santiago*, the defendant alien had been removed in 1998 under INA § 237(a)(2)(A)(iii) on the ground that he had been convicted of an aggravated felony. *See id*. at 1619–20 (citing 8 U.S.C. § 1227(a)(2)(A)(iii)). However, a 2004 Supreme Court decision later made clear that his offense did not qualify as an aggravated felony, and "Palomar-Santiago's removal order thus never should have issued." *Id*. at 1620. In affirming the dismissal of Palomar-Santiago's subsequent indictment for a violation of § 1326, we held that, because Palomar-Santiago had shown that "the removal should not have occurred," he did not need to make a further showing to satisfy the statute's third requirement, *i.e.*, that the entry of the order was "fundamentally unfair." *United States v. Palomar-Santiago*, 813 F. App'x 282, 284 (9th Cir. 2020) (citing *United States v. Aguilera-Rios*, 769 F.3d 626, 630 (9th Cir. 2014)); *see also Aguilera-Rios*, 769 F.3d at 630 (holding that "[i]f Aguilera 'was removed when he should not have been,' his 2005 removal was fundamentally unfair" (citation omitted)). As to the remaining two prongs, we applied settled "Ninth Circuit precedent providing that defendants are 'excused from proving the first two requirements' of § 1326(d) if they were 'not convicted of an offense that made [them] removable.'" *Palomar-Santiago*, 141 S. Ct. at 1620 (alteration in original) (quoting *United States v. Ochoa*, 861 F.3d 1010, 1015 (9th Cir. 2017)).

The Supreme Court reversed, holding that all three requirements must be satisfied, even where an alien's removal order was substantively invalid. *See Palomar-Santiago*, 141 S. Ct. at 1621. The Court held that, in addition to ignoring the statute's use of the conjunctive "and" in

setting forth the three requirements, our excusal of § 1326(d)'s first two requirements contravened Supreme Court authority concerning statutory exhaustion requirements. *Id*. The Court stated that "[w]hen Congress uses 'mandatory language' in an administrative exhaustion provision, 'a court may not excuse a failure to exhaust,'" but "that is what the Ninth Circuit's rule does." *Id*. (quoting *Ross v. Blake*, 578 U.S. 632, 639 (2016)). The Court further held that the mere fact that a removal order was substantively invalid did not, without more, demonstrate compliance with § 1326(d)'s first two requirements. As the Court explained:

> Without the benefit of the Ninth Circuit's extrastatutory exception, § 1326(d)'s first two procedural requirements are *not* satisfied just because a noncitizen was removed for an offense that did not in fact render him removable. Indeed, the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies (by appealing the immigration judge's decision to the BIA) or was deprived of the opportunity for judicial review (by filing a petition for review of a BIA decision with a Federal Court of Appeals).

*Id*. at 1621 (emphasis added).

## B

In view of *Palomar-Santiago*'s clear holding, Portillo-Gonzalez does not contend that he was excused from satisfying any of the three requirements of § 1326(d). Instead, he contends that (1) he has shown that his 2000

removal proceeding was "fundamentally unfair" due to the IJ's erroneous statements concerning his eligibility for voluntary departure, *see* 8 U.S.C. § 1326(d)(3); and (2) the IJ's "erroneous advice *effectively satisfies*" the remaining two requirements (emphasis added). We need not decide whether Portillo-Gonzalez's first contention is correct. Even assuming *arguendo* that the IJ's incorrect statement about Portillo-Gonzalez's eligibility for voluntary departure violated due process and rendered his removal proceedings "fundamentally unfair," that would not automatically or "effectively" satisfy § 1326(d)'s other two requirements.

In contending that he "effectively satisfie[d]" the first two elements of § 1326(d) here, Portillo-Gonzalez relies on a line of cases in which we have held that "an alien who is not made aware of 'his or her apparent eligibility' for relief has had no '*meaningful opportunity* to appeal' the removal and seek such relief" and has not validly waived his or her right to appeal. *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1130 (9th Cir. 2013) (emphasis added) (citations omitted). Portillo-Gonzalez argues that, because no appeal was meaningfully available and any waiver of appeal was not "considered and intelligent," *id*. at 1131 (citation omitted), he has exhausted "any administrative remedies that may have been *available* to seek relief against the order." 8 U.S.C. § 1326(d)(1) (emphasis added). Therefore, he asserts, he has "satisf[ied] (d)(1)." *Gonzalez-Villalobos*, 724 F.3d at 1130. And because he thus had no meaningfully available administrative appeal, he contends that he was also necessarily "deprived of the opportunity for judicial review, satisfying (d)(2)." *Id*.; *see also United States v. Pallares-Galan*, 359 F.3d 1088, 1096 (9th Cir. 2004) ("Effective deprivation of an alien's administrative appeal serves to deprive him of the opportunity for judicial review as well.").

As a result, Portillo-Gonzalez asserts, he has not been "excused" from the requirements of § 1326(d)(1) or (d)(2); he has *satisfied* them. *See United States v. Rojas-Pedroza*, 716 F.3d 1253, 1262 (9th Cir. 2013) ("Under our case law, a defendant *can meet* all these requirements [of § 1326(d)] by establishing that the IJ failed to inform the defendant 'of his or her apparent eligibility' for relief . . . and that the defendant had plausible grounds for relief." (emphasis added) (quoting 8 C.F.R. § 1240.11(a)(2))); *United States v. Arias-Ordonez*, 597 F.3d 972, 977 (9th Cir. 2010) ("Our circuit law is also well established that § 1326(d)'s requirements of exhaustion and deprivation of judicial review *are satisfied* when the government misinforms an alien that he is ineligible for relief." (emphasis added)). We conclude that this line of case authority did not survive the Supreme Court's decision in *Palomar-Santiago*.

The defendant in *Palomar-Santiago* raised a comparable argument, and the Supreme Court expressly rejected it. Specifically, Palomar-Santiago argued that, because an alien "cannot be expected to know that the immigration judge might be wrong" in his or her rulings, "further administrative review of a removal order is not 'available' when an immigration judge erroneously informs a noncitizen," as in that case, "that his prior conviction renders him removable." 141 S. Ct. at 1621 (quoting 8 U.S.C. § 1326(d)(1)). Palomar-Santiago further argued that the resulting "unavailability of administrative review before the BIA would also mean that noncitizens like [him] do not have the 'opportunity' for judicial review under § 1326(d)(2), because they may not seek review of a removal order in federal court without first appealing the order to the BIA." *Id*. at 1621 n.3. The Supreme Court rejected this line of argument, holding that an "immigration judge's error on the

merits" does *not* establish that an appeal is unavailable. *Id.* at 1621. After all, "[a]dministrative review of removal orders exists precisely so noncitizens can challenge the substance of immigration judges' decisions." *Id.* A substantive error of immigration law "does not excuse the noncitizen's failure to comply with a mandatory exhaustion requirement if further administrative review, and then judicial review if necessary, could fix that very error." *Id.*

*Palomar-Santiago* forecloses Portillo-Gonzalez's argument here. The gravamen of Portillo-Gonzalez's argument is that the IJ misapprehended the standards for eligibility of voluntary departure, relying on an outdated regulation that was inconsistent with then-current law. *See supra* note 2. But nothing about that substantive error "can alone render further review of [that] adverse decision 'unavailable.'" 141 S. Ct. at 1621 (citation omitted). Further review is "available," under *Palomar-Santiago*, because "further administrative review, and then judicial review if necessary, could fix that very error." *Id.* Indeed, if Portillo-Gonzalez is correct that the IJ relied on a superseded regulation and ignored controlling BIA precedent, an appeal *would* have fixed that very error. Because "the substantive validity of the removal order is quite distinct from whether the noncitizen exhausted his administrative remedies," the fact that Portillo-Gonzalez "cannot be expected to know that the immigration judge might be wrong" about his eligibility for voluntary departure "does not excuse [his] failure to comply with a mandatory exhaustion requirement." *Id.* at 1621. And although *Ross* recognized that there might be "'circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief,'" a substantive error by

the IJ—even one involving some "complexity"—is not one of them. *Id*. (quoting *Ross*, 578 U.S. at 643).

Portillo-Gonzalez argues that *Palomar-Santiago* is distinguishable, because the IJ's error here "was a *procedural* one," not a substantive one. It was "procedural," he insists, because "the IJ's incorrect representation to [him] that he was ineligible to seek pre-conclusion voluntary departure" affected his decision whether to waive or pursue an appeal, thereby vitiating his waiver of appeal and rendering his hearing procedurally defective. As an initial matter, we reject the premise of Portillo-Gonzalez's argument. *Palomar-Santiago* did not limit its holding to an IJ's substantive errors. On the contrary, the Court expressly rejected the argument that § 1326(d)'s requirements apply differently to substantive errors than to procedurals ones: as the Court explained, both types of objections are "challenge[s]" to such orders and are therefore governed by the limitations of § 1326(d). *See Palomar-Santiago*, 141 S. Ct. at 1621–22.

This effort to evade *Palomar-Santiago* fails for an additional reason. Whether Portillo-Gonzalez was eligible for voluntary departure is a substantive issue, and trying to recast it in procedural garb does not change that fact. Moreover, the argument that the IJ's substantive error vitiated Portillo-Gonzalez's decision *whether* to take an appeal, thereby rendering an appeal "unavailable," ultimately rests on the very same premise that the Supreme Court unanimously disapproved in *Palomar-Santiago*—*viz*., that, because aliens "cannot be expected to know that the immigration judge might be wrong," they "will not recognize a substantive basis for appeal to the BIA," and therefore "administrative review is not practically 'available' under § 1326(d)(1)." 141 S. Ct. at 1621. In light

of this square holding, we cannot accept Portillo-Gonzalez's contention that the IJ's error about the scope of voluntary departure tainted his subjective understanding about the value of an appeal, thereby causing an administrative appeal to be not "available" within the meaning of § 1326(d)(1). And to the extent that our prior precedent has endorsed such an argument, it is clearly irreconcilable with *Palomar-Santiago* and has been abrogated by the Supreme Court's decision in that case. *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

Portillo-Gonzalez further contends that *Palomar-Santiago* endorsed *Ross*'s understanding of what counts as an "available" remedy for purposes of a mandatory exhaustion requirement, and that his situation falls within the types of cases in which *Ross* indicated that administrative procedures would not count as "available." This contention also fails.

*Ross* involved the mandatory exhaustion requirement of the Prison Litigation Reform Act, which requires that inmates "exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." 578 U.S. at 635 (quoting 42 U.S.C. § 1997e(a)). The Court held that the specification that the remedies be "available" meant that "an inmate is required to exhaust those, but only those, grievance procedures that are '*capable of use*' to obtain 'some relief for the action complained of.'" *Id*. at 642 (emphasis added) (citation omitted). *Ross* then articulated "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief": when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the "administrative scheme" is "so

opaque" that "no ordinary prisoner can discern or navigate it"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44. We assume that Portillo-Gonzalez is correct in asserting that, under *Palomar-Santiago*, these same three exceptions apply, *mutatis mutandis*, to the exhaustion requirement in § 1326(d)(1). Portillo-Gonzalez argues that this case falls within *Ross*'s third category because, in his view, the IJ's "misrepresentation" about the availability of voluntary departures "thwart[ed]" him from "taking advantage" of an administrative appeal. *Ross*, 578 U.S. at 644. We disagree.

As Portillo-Gonzalez acknowledges, the *Ross* Court gave examples of cases involving claims falling within this third category, and those examples involve either alleged "threats" or "intimidation," *see* 578 U.S. at 644 n.3 (quoting *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013), and *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011)); an alleged "hide-and-seek" approach to "administrative remedies," *id*. (quoting *Goebert v. Lee County*, 510 F.3d 1312, 1323 (11th Cir. 2007)); or instances in which the prisoner allegedly was either "misled . . . as to the existence or rules *of the grievance process* so as to cause the inmate to fail to exhaust such process," *id*. (quoting *Davis v. Hernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (emphasis added)), or "misled . . . into thinking that . . . he had done all he needed *to initiate the grievance process*," *id*. (quoting *Pavey v. Conley*, 663 F.3d 899, 906 (7th Cir. 2011) (emphasis added)). Portillo-Gonzalez does not contend that this case involved threats, intimidation, or a "hide-and-seek" approach, but only that he was misled by the IJ. But unlike the allegations in the cases *Ross* cited, this case does not involve misleading statements *as to the procedural steps for*

*pursuing administrative remedies*.  The record confirms that the IJ correctly informed Portillo-Gonzalez of his right to appeal and that in response to the IJ asking him whether he would like to appeal the order of removal, Portillo-Gonzalez answered "no."  There was no misrepresentation by the IJ as to the existence of a right to appeal or as to the rules or procedural steps governing such appeals.  Accordingly, even assuming that *Palomar-Santiago*'s discussion of *Ross* adopts the latter case's understanding of when an administrative remedy is not "available," this case does not fall within any of the categories that *Ross* describes.  Instead of a misleading statement about appeal rights or procedures, here there was a substantive mistake as to the availability of relief from removal.  Under *Palomar-Santiago*, that is not enough to render an administrative appeal "unavailable."

## C

Because, under *Palomar-Santiago*, an administrative appeal to the BIA was "available" to challenge Portillo-Gonzalez's 2000 removal order, his failure to exhaust that remedy means that he did not satisfy § 1326(d)(1).  Because he could have sought judicial review had he taken such an appeal, he was not "deprived . . . of the opportunity for judicial review" and therefore did not satisfy § 1326(d)(2).  And because he must satisfy all three requirements to invoke § 1326(d)'s exception, *see Palomar-Santiago*, 141 S. Ct. at 1620–21, he remains subject to § 1326(d)'s general rule that he "may not challenge the validity" of his predicate removal order.  *See* 8 U.S.C. § 1326(d).  The district court therefore properly denied Portillo-Gonzalez's motion to dismiss the indictment.  Its judgment is therefore affirmed.

**AFFIRMED.**