24-2059(L)
*United States v. Ramirez Rodriguez*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2025
Argued: September 5, 2025
Decided: December 16, 2025

Nos. 24-2059(L), 24-2093(Con.)

_____

UNITED STATES OF AMERICA,

*Appellee,*

— v. —

LEPIDO RAMIREZ RODRIGUEZ,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of New York
No. 1:23-cr-0363, Vernon S. Broderick, *Judge*

_____

Before:     NEWMAN, PARKER, AND MERRIAM, *Circuit Judges.*

In 1999, Defendant-Appellant Lepido Ramirez Rodriguez, who was a legal permanent resident of the United States, was convicted of criminal sale of a controlled substance in the second degree, in violation of New York law. At a hearing in February 2000, an Immigration Judge ("IJ") determined that Ramirez

Rodriguez's conviction was an aggravated felony and a controlled substance offense that rendered him removable and ordered him deported. Following his deportation, Ramirez Rodriguez twice re-entered the United States without authorization. Both times, he was convicted of illegal reentry and the 2000 removal order was reinstated.

But the 2000 removal order was invalid. As this Court made clear in *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), criminal sale of a controlled substance in the second degree under New York law is not a removable offense. Accordingly, when Ramirez Rodriguez was charged with illegal reentry for a third time in the case before us, he moved to dismiss the indictment pursuant to 8 U.S.C. § 1326(d), contending that the 2000 removal order was fundamentally unfair and could not serve as a valid predicate for his removal.

The district court, relying on the two subsequent illegal reentry convictions, concluded that Ramirez Rodriguez was not prejudiced by the error and denied the motion. He then pleaded guilty but preserved his right to appeal the denial of his motion to dismiss. The district court entered a final judgment from which Ramirez Rodriguez appeals.

We agree with Ramirez Rodriguez that the district court incorrectly relied on the two later reinstatements of the removal order. The only removal order ever entered against Ramirez Rodriguez was based on a crime that did not render him removable. Because the subsequent reinstatements of the invalid 2000 removal order are not new removal orders, they do not supply a valid basis for the illegal reentry conviction that is the subject of this appeal, nor is it appropriate to look at the circumstances at the time they were entered to assess prejudice. Accordingly, in Case No. 24-2093, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion. Case No. 24-2059 is **DISMISSED** for lack of appellate jurisdiction.

_____

FOR APPELLANT: SIOBAHN C. ATKINS, Assistant Federal Public Defender, (Edward S. Zas, Assistant Federal Public Defender, *on the brief*), New York, NY.

FOR APPELLEE: JERRY FANG, Assistant United States Attorney (Michael D. Maimin, Assistant United States Attorney, *on the brief*), for Matthew Podolsky, Acting United States Attorney for the Southern District of New York, New York, NY.

BARRINGTON D. PARKER, *Circuit Judge*:

In 1999, Defendant-Appellant Lepido Ramirez Rodriguez, who was a legal permanent resident, was convicted of criminal sale of a controlled substance in the second degree, in violation of New York law. At a hearing in February 2000, an Immigration Judge ("IJ") determined that Ramirez Rodriguez's conviction was an aggravated felony and a controlled substance offense that rendered him removable and ordered him deported. Following his deportation, Ramirez Rodriguez twice re-entered the United States without authorization. Both times, he was arrested and convicted of illegal reentry, and both times, the 2000 removal order was reinstated.

But the 2000 removal order was invalid. In *United States v. Minter*, 80 F.4th 406 (2d Cir. 2023), we held that criminal sale of a controlled substance in the second degree under New York law is not a removable offense. Accordingly, when Ramirez Rodriguez was charged with illegal reentry for a third time in the case before us, he moved to dismiss the indictment under 8 U.S.C. § 1326(d), contending that the removal order entered in 2000 was fundamentally unfair and could not serve as a valid predicate for his removal.

The district court, relying on the subsequent illegal reentry convictions,

concluded that Ramirez Rodriguez had not established that he was prejudiced by the error, as we have held is required by § 1326(d)(3), and denied the motion. Ramirez Rodriguez then pleaded guilty under an agreement that preserved his right to appeal the denial of his motion to dismiss the indictment. The district court entered final judgment from which Ramirez Rodriguez appeals.

We agree with Ramirez Rodriguez that the district court incorrectly relied on the two later reinstatements of the removal order. The only removal order entered against him was based on a crime that did not render him removable. Because the subsequent reinstatements of the invalid 2000 removal order are not new removal orders, they do not supply a valid basis for the illegal reentry conviction that is the subject of this appeal, nor is it appropriate to look at the circumstances at the time they were entered to assess prejudice. Accordingly, in Case No. 24-2093, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion. Case No. 24-2059 is **DISMISSED** for lack of appellate jurisdiction.

## BACKGROUND

### I.     Ramirez Rodriguez's Initial Conviction and Removal Order

Ramirez Rodriguez, a citizen and national of the Dominican Republic, became a legal permanent resident of the United States in 1990. In 1999, he was

2

convicted in New York state court of second-degree criminal sale of a controlled substance, cocaine, in violation of New York Penal Law § 220.41.

Following his conviction, Ramirez Rodriguez was ordered to appear for removal proceedings in December 1999. He did not have counsel. The IJ initially adjourned the hearing to afford him the opportunity to obtain counsel, but he was unsuccessful in doing so.

His hearing took place on February 11, 2000. Ramirez Rodriguez admitted that he was not a citizen of the United States; that he had been convicted on July 22, 1999, for the sale of cocaine in the second degree; that he was serving a prison term for the conviction; and that he had not appealed his conviction. The IJ told Ramirez Rodriguez that he could be removed from the country both because he was convicted of a drug offense and because his conviction was for an aggravated felony. The IJ concluded: "Mr. Ramirez, you can't stay in this country because of your selling of cocaine conviction." App'x at 52.

The IJ told Ramirez Rodriguez that he would be deported and asked where he wanted to go. Ramirez Rodriguez answered that he wanted to stay in the United States because he has children here. The IJ responded: "You will not stay in this country, Mr. Ramirez." *Id.* Ramirez Rodriguez then exclaimed, "I'm

leaving, I'm leaving, I'm leaving." *Id.*  The IJ ordered Ramirez Rodriguez deported to the Dominican Republic.  He informed Ramirez Rodriguez that he could appeal the decision to the BIA or make it final that day; Ramirez Rodriguez said: "No, I don't want to do anything, I just want to leave this country and that's it." *Id.*  The IJ stated, "that's what we want for you, Mr. Ramirez." *Id.*  Ramirez Rodriguez responded: "I know, that's what I know, you want to get me out of here." *Id.*

Ramirez Rodriguez was granted conditional parole for deportation.  On April 19, 2001, he was transferred to immigration custody and deported eleven days later.

## II. Ramirez Rodriguez's Subsequent Illegal Reentry Convictions and Removals

In the following two decades, Ramirez Rodriguez returned to the United States twice, both times without authorization.  In November 2008, after the government denied his application for permission to reapply for admission, Ramirez Rodriguez returned to the United States.  A few months later, when Ramirez Rodriguez submitted his fingerprints to New York State as part of a job application, he was arrested and charged with illegal reentry.  *See United States v. Ramirez*, No. 09-cr-0751 (RWS), 2009 WL 4722237 (S.D.N.Y. Dec. 4, 2009).  He pleaded guilty to the charge, was sentenced to eighteen months' imprisonment,

4

and served the term. In 2010, once he completed the term, an immigration official "reinstated" the 2000 removal order; Ramirez Rodriguez was again deported to the Dominican Republic on that basis.

Ramirez Rodriguez returned to the United States again. This time, he was arrested in 2013 and charged with a state money-laundering offense. He ultimately was not prosecuted for that crime, but he was charged again with illegal reentry following removal for an aggravated felony, along with a violation of supervised release arising from the 2009 illegal reentry conviction. *See United States v. Ramirez*, No. 13-cr-0468 (KMW) (S.D.N.Y.). He pleaded guilty again and was sentenced to forty-five months imprisonment on the illegal reentry conviction, to be followed by one month of imprisonment for the violation of supervised release. In 2016, after he served his sentence, the government did not institute new removal proceedings but simply reinstated the 2000 removal order and removed him again on that basis.

III.    The Current Charge and Proceedings

Ramirez Rodriguez returned to the United States again. In August 2022, he was arrested in the Bronx with over a kilogram of cocaine and charged with various crimes. He pleaded guilty to criminal possession of a controlled substance in the third degree and was sentenced to two years' imprisonment. He was also

charged, for a third time, with aggravated illegal reentry—the offense underlying this appeal.

This time, however, Ramirez Rodriguez moved to dismiss the Indictment, challenging the validity of the 2000 removal order. *See* 8 U.S.C. § 1326(d). Based on our 2023 decision in *Minter*, 80 F.4th 406, he argued that the 2000 removal order was invalid because it was predicated on a conviction for which he was not removable.

At oral argument before the District Court, the government conceded that, in light of *Minter,* the conviction underlying the 2000 removal order was not an aggravated felony or a controlled substance offense. *See* App'x at 159. But the district court nonetheless denied Ramirez Rodriguez's motion to dismiss. It concluded that although the government had conceded a fundamental procedural error, Ramirez Rodriguez could not demonstrate prejudice resulting from that error, a showing necessary to meet the third prong of Section 1326(d)'s test, because he had two subsequent illegal reentry convictions. *United States v. Rodriguez*, 722 F. Supp. 3d 264, 271–76 (S.D.N.Y. 2024). Because the district court denied Ramirez Rodriguez's motion based on failure to establish prejudice, it did not address "whether [Ramirez Rodriguez]'s failure to exhaust his administrative

6

remedies and failure to seek judicial relief bars his collateral challenge to the validity of the removal order." *Id.* at 269 n.3.

Ramirez Rodriguez then pleaded guilty to the illegal reentry count pursuant to an agreement that preserved both his right to appeal the ruling denying his motion to dismiss and the government's right to "raise on appeal any argument for affirmance of the district court's ruling, including arguments not reached by or raised before the district court." App'x at 231. In July 2024, the district court sentenced Ramirez Rodriguez to a thirty-month term of incarceration, to be followed by three years of supervised release. The court entered a final judgment, and Ramirez Rodriguez appealed.

## DISCUSSION

### I. Standard of Review

Before trial, a defendant "may raise by . . . motion any defense, objection, or request that the court can determine without a trial on the merits," including a motion alleging "a defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B). "We review *de novo* the district court's denial of a defendant's motion to dismiss the indictment on the basis of a collateral attack on his deportation order under § 1326(d)." *United States v. Gill*, 748 F.3d 491, 496–97 (2d Cir. 2014) (citation and quotation marks omitted); *United States v. Maxwell*, 118 F.4th 256, 263 (2d Cir. 2024)

7

("We review *de novo* the denial of a motion to dismiss an indictment.").

## II.  Fundamental Unfairness

"[W]here a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." *United States v. Mendoza Lopez*, 481 U.S. 828, 837–88 (1987).  Accordingly, an individual facing an illegal reentry charge under 8 U.S.C. § 1326(a) can "defend against such a charge by challenging the validity of the deportation order upon which the charge is predicated." *United States v. Copeland*, 376 F.3d 61, 66 (2d Cir. 2004).  To do so successfully, the defendant must demonstrate that "(1) [he] exhausted any administrative remedies that may have been available to seek relief against the order; (2) the deportation proceedings at which the order was issued improperly deprived the [defendant] of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair."  8 U.S.C. § 1326(d).  We have interpreted the third prong, the "fundamental unfairness prong" that this appeal addresses, to require the defendant to "show both a fundamental procedural error and prejudice resulting from that error."  *United States v. Fernandez-Antonia*, 278 F.3d 150, 159 (2d Cir. 2002).

There is no dispute that Ramirez Rodriguez carried his burden to show that

8

the 2000 removal order involved a fundamental procedural error.  *See* Gov't Br. at 28.  Ramirez Rodriguez was ordered removed following his conviction for a crime that was not a removable offense.  The district court nonetheless denied his motion to dismiss based solely on its determination that Ramirez Rodriguez failed to meet his burden to demonstrate prejudice resulting from that error.  The district court held that "[b]ecause Defendant's 2009 and 2013 illegal reentry convictions, which predated the reinstatement of the 2000 removal order, constitute aggravated felonies rendering him ineligible for immigration relief, Defendant cannot establish he suffered prejudice as a result of the immigration judge's procedural error."  *Rodriguez*, 722 F. Supp. 3d at 266.  On appeal, Ramirez Rodriguez argues that this determination was error and that he has established prejudice.  We agree.

"Prejudice is shown where 'defects in the deportation proceedings may well have resulted in a deportation that would not otherwise have occurred.'" *Copeland*, 376 F.3d at 73 (quoting *Fernandez-Antonia*, 278 F.3d at 159).  For example, where the error at issue is that a noncitizen was not informed of his right to Section 212(c) relief, but the noncitizen cannot show that he likely would have been granted that relief, he fails to show prejudice.  *See Copeland*, 376 F.3d at 73.  In the same vein, where the error at issue is that a noncitizen was not informed of his

9

right to appeal an adverse decision, but the noncitizen cannot show that he likely would have prevailed in such an appeal—that is, he cannot show that "he would not have been removed even after a procedurally perfect removal proceeding"—he fails to demonstrate prejudice. *Fernandez-Antonia*, 278 F.3d at 159–60.

The case law thus focuses on the outcome of the hearing infected by a fundamental procedural error. If a noncitizen can show that, absent that procedural error, he likely would not have been removed, he has shown prejudice. The analysis is akin to the *Strickland* standard for ineffective assistance of counsel.[1]

Here, the prejudice analysis is straightforward. The fundamental procedural error at the 2000 hearing was that Ramirez Rodriguez was deemed removable for a crime that did not, in fact, render him removable. Absent that error, Ramirez Rodriguez could not have been found removable and therefore would not have been removed.

Our case law is clear that even if a defendant has later convictions that render him removable, that does not change the prejudice analysis.[2] In *United*

---

[1] *See Copeland*, 376 F.3d at 73 ("In our view, however, the appropriate test for prejudice is the one used to decide ineffective assistance of counsel claims, namely, prejudice is shown where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'").

[2] While we do not have to reach this question to resolve the issue before us, we are skeptical of the district court's conclusion that Ramirez Rodriguez's subsequent illegal reentry convictions

*States v. Scott*, we explained that the language of Section 1326(d)(3)—which requires a noncitizen to demonstrate that "the *entry* of the deportation *order* was fundamentally unfair"—"focus[es] on the 'entry' of the order" and therefore "suggests a temporal limitation on the district court's inquiry." 394 F.3d 111, 118 (2d Cir. 2005) (quoting 8 U.S.C. § 1326(d)(3)). Courts are required to "reconstruct events as they existed at the time of the disputed deportation proceeding," and may not consider "*ex post* data." *Id.* at 118–19. Thus, in *Scott*, "the only pertinent issue [was] whether entry of the deportation order *in 1996* prejudiced Scott—regardless of Scott's potential deportability for some later crimes." *Id.* at 118. The same is true here. We consider only whether the entry of the deportation order in 2000 prejudiced Ramirez Rodriguez, without considering whether his subsequent illegal reentry convictions render him removable. As set forth above, the entry of

_____

render him removable. Illegal reentry is an aggravated felony when the noncitizen "was previously deported on the basis of a conviction for an offense described in another subparagraph of this paragraph"—that is, another aggravated felony. 8 U.S.C. § 1101(a)(43)(O). Here, Ramirez Rodriguez was previously deported on the basis of a crime that was thought at the time to be an aggravated felony, but that we have subsequently held is not. The district court relied heavily on the Fifth Circuit's decision in *United States v. Huerta-Rodriguez*, which held that "when a court in an intervening illegal reentry proceeding characterized the defendant's predicate offense as an aggravated felony . . . there is no requirement for a court to revisit the predicate offense," and "the intervening illegal reentry conviction is itself an aggravated felony." 64 F.4th 270, 276 (5th Cir. 2023). That reliance, however, was misplaced. The Fifth Circuit expressly limited its holding to "the narrow set of circumstances before [it]," *id.* at 278 – circumstances that involved application of a sentencing increase in 8 U.S.C. § 1101(a)(43)(O), rather than a motion to dismiss the indictment.

11

that order was unquestionably prejudicial.

The district court, recognizing the force of *Scott*, nonetheless found that it could consider the subsequent illegal reentry convictions in assessing prejudice by focusing its prejudice analysis on a different point in time: not at the time of entry of the 2000 removal order, but at the time of the 2010 and 2016 reinstatements of the removal order. The district court recast the 2010 and 2016 reinstatements, not the 2000 removal order, as the "disputed deportation proceeding." *Rodriguez*, 722 F. Supp. 3d at 275. The district court distinguished *Scott*: "Critically, *Scott* involved a single removal order." *Id.* at 276.

But this case too involves a single removal order. Reinstatement of removal is governed by 8 U.S.C. § 1231(a)(5), which provides:

> If the Attorney General finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, *the prior order of removal is reinstated from its original date* and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and *the alien shall be removed under the prior order* at any time after the reentry.

8 U.S.C. § 1231(a)(5) (emphases added). Reinstatement of removal involves no separate determination of removability, limited procedural protections, and no new removal order. Instead, the noncitizen is simply removed "under the prior order." *Id.* A noncitizen facing a reinstated removal order cannot challenge the

underlying order of removal under § 1231(a)(5), cannot collaterally attack the underlying removal order in federal court, *Garcia-Villeda v. Mukasey*, 531 F.3d 141, 150 (2d Cir. 2008), and cannot ask the BIA for review as he could with an initial removal order, *In re G-N-C*, 22 I. & N. Dec. 281 (BIA 1998).

We have said that this lack of procedural protections "does not offend due process" because "reinstatement of the prior deportation order does not alter petitioner's legal condition." *Garcia-Villeda*, 531 F.3d at 150. But if an illegal reentry charge may be predicated on reinstatement of an *invalid* removal order, the reinstatement would fundamentally alter the noncitizen's legal condition because it would provide an independent basis for a criminal charge. That cannot be the case. Where a removal order is invalid, reinstatements of that same removal order carry no independent validity. If the government cannot support an illegal reentry charge against Ramirez Rodriguez based on the 2000 removal order—and it cannot—it similarly cannot support that charge based on the reinstatements of the same prior invalid removal order. For that reason, looking at the time of the reinstatements rather than the time of the initial removal order in assessing prejudice is improper. In so holding, we join the Ninth Circuit, which has explained that where the original removal "was not legally sound . . . none of the

13

reinstatements is legally any stronger than the original order." *United States v. Arias-Ordonez*, 597 F.3d 972, 978 (9th Cir. 2010), *abrogated on other grounds as recognized in United States v. Portillo-Gonzalez*, 80 F.4th 910, 918 (9th Cir. 2023). As the *Arias-Ordonez* court pointed out, "you can't take a reinstatement and launder the original deportation because the reinstatement bears the same taint as the original deportation." *Id.* at 976 (citation and quotation marks omitted).

Our consideration is limited to whether the original removal order—the *only* removal order—was fundamentally unfair. As set forth above, it was. Ramirez Rodriguez was ordered removed for a crime that did not render him removable. That is the only removal order that has ever been entered against him. There is no dispute that it is invalid and that Ramirez Rodriguez was prejudiced based on the facts as they existed at the time of that removal proceeding.

## III. Alternative Grounds

The government argues that even if we believe that Ramirez Rodriguez established prejudice, we should nonetheless affirm the denial of his motion to dismiss on the alternative grounds that Ramirez Rodriguez did not satisfy the gatekeeping requirements of Section 1326(d)(1) and (2). Specifically, the government contends that Ramirez Rodriguez did not satisfy the requirement to demonstrate administrative exhaustion and that he was deprived of the

14

opportunity for judicial review.

We decline the government's invitation. We typically "do[] not consider an issue not passed upon below." *Booking v. Gen. Star Mgmt. Co.*, 254 F.3d 414, 418 (2d Cir. 2001). The district court did not address these questions below. They may involve factual inquiry and are best left to the district court to resolve in the first instance.

## CONCLUSION

For the foregoing reasons, in Case No. 24-2093, we **VACATE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion. Case No. 24-2059 is **DISMISSED** for lack of jurisdiction.